UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

PAETEC COMMUNICATIONS, INC.     )
    )
              Plaintiff,     )
    )
              v.     )       Civil Action No. 08-cv-00397 (JR)
    )
    )
COMMPARTNERS, LLC     )
    )
              Defendant.     )
_____ )

## DEFENDANT'S MOTION TO STAY, MOTION TO DISMISS AND/OR MOTION TO TRANSFER

Defendant Commpartners, LLC, through counsel, moves this Honorable Court for an

Order pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3) and (6) to dismiss the complaint for lack of

personal jurisdiction and/or proper venue in this district.  Alternatively, the Court should transfer

this action to the District of Nevada pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a).

Additionally, Defendant moves this Court for an Order to Stay the proceedings should the

Court be inclined to deny the defendant's motion as this matter is clearly within the regulatory

purview of the Federal Communications Commission.. In support of this motion, the Court is

respectfully referred to the accompanying memorandum of points and authorities.  A proposed

Order consistent with this motion is attached hereto.

Respectfully submitted,


**/s/ Stephen G. DeNigris, Esq.**
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Defendant
2100 M Street N.W. Suite 170-283
Washington, D.C.  20037

Office:          (703)416-1036
Fax:             (703)416-1037

E-mail:          sgd853@aol.com


MARQUIS & AURBACH

**By: /s/ Nick D. Crosby, Esq.**
Nick D. Crosby, Esq. (pro hac vice)
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorney(s) for Defendant




Date:   May 2, 2008
         Washington, D.C.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PAETEC COMMUNICATIONS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 08-cv-00397 (JR) |
| | ) |
| | ) |
| COMMPARTNERS, LLC | ) |
| | ) |
| Defendant. | ) |
| ———————————————————— | ) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
## AND/OR TRANSFER

Defendant, CommPartners, LLC,  files this memorandum of law in support of
Defendant's Motion to Dismiss for Lack of Personal Jurisdiction; Motion to Dismiss for
Improper Venue and/or to Transfer, on the basis that venue is improper in the District of
Columbia, and transfer to the District of Nevada is appropriate for the convenience of parties and
witnesses; and Motion to Stay.

**1.    BACKGROUND AND ALLEGATIONS**

Plaintiff commenced this action against Defendant Compartners, LLC, concerning the
defendant's alleged failure to pay for the use of the plaintiff's local network facilities to complete
long-distance calls.  (Comp. ¶1)  Plaintiff Paetec is a Delaware corporation with its principal
place of business in Fairport, New York. The company is in the business of providing
telecommunications services and telecommunications related services. (Comp. ¶ 2)

CommPartners, is a nationwide Internet Protocol (IP) based network operator providing wholesale Voice over Internet Protocol (VoIP) and enhanced IP applications to carriers, strategic partners, and Value Added Resellers (VARS). (Exh. A; *Declaration of David S. Clark* ¶5)  It is a privately held company and is organized as a Nevada Limited Liability Company (LLC).  It is headquartered at 3291 N. Buffalo, Suite 150, Las Vegas, NV 89129.  *Id.* at ¶¶4-5  The CommPartners Network Control Center is located at its Las Vegas, NV facility.

 The CommPartners' network is designed to connect public and private IP networks with the Public Switched Telephone Network (PSTN). The Company provides the network needed for Voice-Over- Internet Protocol (VoIP) providers to originate and terminate IP-based communications, as well as allow for the termination of traditional circuit-switched telephone calls. *Id.* at ¶7.  The traffic carried over this network is comprised of primarily information services traffic such as VoIP, as well as interstate and intrastate Local Access Transport Area (LATA) and local traffic. An LATA is a geographical area in which the local telephone company is allowed to carry not only local calls, but long distance toll calls as well. *Id.* at ¶8.

CommPartners' physical network is a " hub-centric topology" consisting of switching centers in Las Vegas, Chicago, Atlanta, and New York (Super-PoPs). These switching centers are colocation points situated in highly sophisticated environments where large numbers of network providers meet for interconnection among their networks. At these locations, CommPartners has placed softswitch equipment, routers and border control devices. *Id.* at ¶9.  When a VoIP call is placed over the CommPartners' network, it is sent to the closest Super-PoP and if need be, transported across the CommPartners private VoIP backbone to the called destination. Unlike almost all other VoIP network service providers, CommPartners does not use the public Internet

4

for inter-continental transport of VoIP calls. *Id*. at ¶10.

CommPartners uses various Internet backbone carriers to effectively place the Super-POP's "one hop" away from all major Internet backbone carriers. Thus, if the called party were also a VoIP customer, the call would remain on IP and could be routed to one of the Internet backbone providers to its termination point. If the called party uses traditional voice service, the call is converted to voice protocol and routed to that party through the nearest party Regional Bell Operating Companies (RBOC), incumbent local carrier (ILC), competitive local exchange carrier (CLEC) or wireless carrier's local telephone switch that serves the called party. *Id.* at ¶¶11-12. Paetec terminates traffic to its end users as originated by the CommPartners network user. Payment for this termination is governed by tariffs, although CommPartners does not believe that PaeTec's tariffs are applicable to VoIP-originated traffic. *Id.* at ¶13.

CommPartners' service is also present in areas served by a local exchange telecommunications company, that are required by the Telecommunications Act of 1996, P.L. 104-104, to interconnect their networks with competitive local exchange carriers. (CLEC) A CLEC is a company certificated by an appropriate regulatory commission to provide local exchange service within another telecommunications carriers' franchised area. CommPartners is a CLEC. When CommPartners wants to expand its IP coverage in an area it does not have a physical network in, it may enter into CLEC agreements with the local telecommunications company or an Interconnection Agreement Between Services Providers (ICA) to obtain access in that market. *Id*. at ¶¶14-15.

CommPartners' customers use Paetec's local network facilities to complete long-distance calls in certain geographic locations where Paetec operates its network. When a long-distance

call is made by a CommPartners customer to an area where Paetec operates it network, the call is

transmitted, at some point, through a Paetec facility and completed or "terminated" to the person

called.  (Comp. ¶8)  Some of these services include interstate and intrastate exchange access.  *Id.*

In providing these access services, the plaintiff filed various tariffs with the Federal

Communications Commission and the Public Service Commission of the District of Columbia.

(Comp. ¶17)  The tariffs describe the rates and services offered by the plaintiff to its customers.

The tariffs also contain rules and regulations concerning the rendering of the plaintiff's

telecommunications services.  (Comp. ¶18)

Since April 1, 2007, the plaintiff alleges that the defendant accessed and utilized

interstate and intrastate telecommunication services from the plaintiff's telecommunications

network.  (Comp. ¶10)   The plaintiff further alleges that when the defendant accessed the

PaeTec telecommunications network, CommPartners "undertook and assumed an obligation to

make all payments due to Paetec in accordance with the terms of the tariffs filed with the Federal

Communications  and the Public Service Commission of the District of Columbia.  (Comp. ¶19)

Paetec alleges that it invoiced CommPartners for the services utilized and that despite

receiving notice from Paetec, CommPartners failed to pay the amounts owed which now exceed

$159,000.00 including late payment fees, potential fees and expenses in collecting the charges

owed.  (Comp. ¶¶11-13).  All of the alleged access charges claimed to be owed by PaeTec arose

from service usage in Massachusetts, New York, Pennsylvania, Delaware, or Florida.  *Id.* at ¶21.

Thus, the alleged access fees owed did not arise from transactions occurring from or terminating

within the District of Columbia..  *Id.* at ¶21-22.

CommPartners does not have a physical presence in the District of Columbia..  In this

6

regard, CommPartners:

- does not have offices or a physical network in the District of Columbia;

- does not have any wholesale customers in the District of Columbia;

- does not directly transact any business with customers from the District of

Columbia over its network.  *(Exh. A;* Declaration of David S. Clark at ¶¶ 16-18).

CommPartners has a CLEC license in the District of Columbia but that license is not used

by CommPartners.  Indeed, in CommPartners' Annual Report, the company notes that it has not

commenced operations in the District of Columbia.  In the same vein, CommPartners has no

current plans to deploy network in D.C. and instead will send traffic to other carriers with

physical network presence in D.C. for termination.  *Id.* at ¶¶19-20.

The plaintiff asserts three claims against CommPartners; Count I for Breach of Tarriffs;

Count II Quantum Meruit; and Count III Unjust Enrichment.  Plaintiff Paetec asserts venue in

this matter solely on the allegation that Defendant CommPartners is found in and transacts

business in the District of Columbia.

## 2.  ARGUMENT

### A.  The Federal Communications Commission Has Primary Jurisdiction Over This Dispute

The FCC has not determined the application of access charges to VoIP-originated calls.

Because the Complaint asserts a cause of action for recovery of access charges for VoIP-

originated calls based upon Paetec's tariffs, and not an ICA between the parties, the FCC has

primary jurisdiction over the action and the matter should be stayed until the FCC pronounces a

position regarding the applicability of access charges for VoIP-originated calls.  Primary

jurisdiction lies with the FCC.

The Complaint should be dismissed or, alternatively, stayed because the claims alleged are better resolved by the FCC. "The primary jurisdiction doctrine allows a district court to dismiss, or stay, an action over which it has subject matter jurisdiction if it finds that an agency is better suited to make the initial decision on the issues in dispute." *AT&T v. MCI Comm. Corp.*, 837 F.Supp. 13, 16 (D.C.Cir. 1993)(citing *Far East Conference v. United States*, 342 U.S. 570 (1952); *Allnet Communication Serv., Inc. v. Natl. Exchange Carrier Ass'n*, 965 F.2d 1118, 1120 (D.C.Cir. 1992). The application of the primary jurisdiction doctrine is applied on a case-by-case basis "in order to secure uniformity in outcomes and to obtain the benefit of the expertise and experience of administrative agencies. *Id.* (citing *In re Long Distance Telecommunications Litig.*, 831 F.2d 627, 631 (6th Cir. 1987)). To make its decision on whether to invoke the primary jurisdiction doctrine, courts should consider four factors:

(1) whether the question at issue is within the conventional experience of judges; (2) whether the question at issue lies peculiarly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *Id.* (citing *Oasis Petroleum Corp. v. United States Dep't of Energy*, 718 F.2d 1558, 1564 (Temp.Emer.Ct.App. 1983)). Here, all four factors indicated primary jurisdiction should be invoked.

## 1.      The Question is Not Within the Conventional Experience of Judges

The first factor weighs in favor of primary jurisdiction because the ultimate issue of whether VoIP-originated calls are subject to carrier access charges is not within the conventional experience of judges. While CommPartners recognizes the Court is well-equipped to handle a

"breach of tariff" cause of action, the issues in this case are beyond the conventional experience

of the Court and require the expertise of the FCC.  As stated above, the main issue in this case is

not whether CommPartners failed to pay tariffs on file with the FCC, but rather whether the

tariffs apply to VoIP-originated calls.  In *AT&T, supra*, AT&T filed suit against three carriers

under section 203 of the Communications Act, 47 U.S.C. § 207, alleging the carriers provided

long distance telephone services at "secretly negotiated and unfiled rates."  *AT&T*, 837 F.Supp. at

15.  The carriers moved to dismiss the complaint or, alternatively, to stay the proceedings

because identical issues were being considered by the FCC.  *Id.*

> In ruling to invoke the primary jurisdiction doctrine, the court held:
>
> The Court finds that the FCC is better suited to determine the unresolved issue if whether
> either Sprint's tariffs or the tariffs filed by MCI after the *AT&T v. FCC* decision violate
> section 203 of the Communications Act.  It is particularly appropriate to invoke the
> primary jurisdiction doctrine where it is necessary to determine whether a tariff is in
> compliance with regulatory standards.  *See, e.g., Allnet v. NECA*, 965 F.2d at 1120;
> *Southwestern Bell Tel. Co. v. Allnet Communications Serv., Inc.*, 789 F.Supp. 302, 304
> (E.D.Mo. 1992).

*AT&T*, 837 F.Supp. at 16.

In this matter, the issues presented are not within the conventional experience of judges.

The FCC has not pronounced a rule addressing the applicability of carrier access charges for

VoIP-originated calls.  The decision of what, if any, access charges should apply to VoIP-

originated calls is a technical evaluation which requires a thorough understanding of the technical

systems associated with VoIP-originated, transmitted, and subsequently terminated calls.

Additionally, the evaluation and decision will require a very detailed understanding of the

telecommunications industry with a forward-looking emphasis on the effect a decision to apply

carrier access charges to VoIP-originated calls will have.  This is simply out of the conventional

experience of judges and requires the technical and regulatory insight of the FCC.  Thus, the first

factor weighs in favor of invoking the primary jurisdiction doctrine.

> **2.      The Issue of the Applicability of Carrier Access Charges to VoIP-Originated Calls is Reserved to the Discretion of the FCC and Requires the Expertise of the FCC.**

Next, the true issue presented with Paetec's Complaint – whether carrier access charges

apply to VoIP-originated calls – lies with the FCC's discretion and will certainly require the

FCC's expertise.  As discussed above, the issue of applicability of access charges to VoIP-

originated calls has not been determined by the FCC.  The evaluation of this issue requires the

FCC's expertise because not only is the issue highly technical, i.e. the manner in which voice and

data transmission are routed, but the ramifications of the decision on this issue will have far

reaching effects.  It is not secret that the telecommunications industry is evolving at an alarming

rate, with new media entering the market at an unprecedented rate.  With the invention and

implementation of new methods of communication, parties are often left waiting in the wings for

guidance from the FCC on key issues.  The issue of whether access charges apply to VoIP-

originated calls is currently before the FCC and, as set forth above, the FCC has yet to announce

a rule.  The decision ultimately reached by the FCC will likely change the manner in which

certain telecommunication companies charge and pay for services associated with VoIP-

originated calls.  With the popularity companies offering VoIP services has received in the very

recent years, the decision the FCC reaches on the issue will not only affect the companies

providing VoIP services, but will also affect the end users.  For these reasons, the expertise of the

FCC is critical to reach a fair and consistent rule regarding the applicability of carrier charges.

Again, given the complex technical aspect of the issue, coupled with the far-reaching effects any

rule will have on the issue, it seems apparent the expertise of the FCC is not simply preferred, but is necessary. As such, the second factor weighs in favor of invoking the primary jurisdiction doctrine.

### 3.    Danger of Inconsistent Rulings Exists

Next, dismissal or, alternatively, a stay of proceedings is proper because the danger of inconsistent rulings exits due to the lack of a rule by the FCC regarding application of carrier access charges to VoIP-originated services. As set forth above, the FCC has not reached a decision on the applicability, if any, of carrier access charges for VoIP-originated calls. The matter is before the FCC and the agency has yet to announce a rule regarding this issue. If the Court enters an order – one way or the other – regarding the applicability of carrier access charges for VoIP-originated calls, the danger for inconsistent rulings is likely. For example, if Paetec prevails on its Complaint and this Court determines VoIP-originated calls are subject to carrier access charges, and the FCC subsequently adopts a regulation to the contrary, an inconsistent ruling would manifest itself and prejudice CommPartners. Similarly, if the Court determines CommPartners' VoIP-originating calls are not subject to carrier access charges, and the FCC declares VoIP-originated calls are subject to carrier access charges, and inconsistent ruling would exist. Given the uncertainty present in the industry on this issue, it cannot be said a danger for inconsistent rulings does not exist. Irrespective of the Court's ultimate decision on the claims asserted by Paetec in its Complaint, the danger for inconsistent rulings exists because the FCC has not announced a rule regarding carrier access charges for VoIP-originating calls. Thus, the third factor weighs in favor of dismissal or, alternatively, a stay of proceedings pending the FCC's decision on the issue.

### 4.    Prior Application to the Agency

Finally, CommPartners has not made a prior application to the FCC regarding the applicability of carrier access charges for VoIP-originated calls.  As set forth above, the FCC has not issued any decision regarding the applicability of carrier access charges to VoIP-originated calls.  CommPartners has not applied to the agency for a decision on the issue and, therefore, dismissal or, alternatively, a stay of the proceedings is warranted because the FCC has not rendered a decision regarding the applicability of carrier access charges in this regard.  Thus, the fourth factor weighs in favor of dismissal or, alternatively, a stay of the proceedings pending a decision by the FCC.

### B.    Personal Jurisdiction Over CommPartners Does Not Exist In this Case

The Defendant assets that this Honorable Court does not have personal jurisdiction over CommPartners because CommPartners does not maintain minimum contacts with the District of Columbia and does not meet the legal standard for doing business within the District.

When personal jurisdiction is challenged pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2), the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). The plaintiff must allege specific acts connecting the defendant with the forum. *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001).  Bare allegations and conclusory statements are insufficient. *Id*.  In determining whether a factual basis for personal jurisdiction exists, the court should resolve factual discrepancies appearing in the record in favor of the plaintiff. *Crane*, 894 F.2d at 456. The court need not treat all of the plaintiff's allegations as true, however. *United States v. Philip Morris, Inc.*, 116 F. Supp.2d 116,

120 n. 4 (D.D.C. 2000). Instead, the court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *Id.*; *see also DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 20 (D.D.C. 2002)(plaintiff's assertions of fact are "presumed to be true unless directly contradicted by affidavit," or other evidence).

When reviewing a challenge pursuant to Rule 12(b)(1) or 12(b)(2), the court may consider documents outside the pleadings to assure itself that it has jurisdiction. *Land v. Dollar*, 330 U.S. 731, 735 n. 4 (1947) ("when a question of the District Court's jurisdiction is raised, either by a party or by the court on its own motion . . . the court may inquire by affidavits or otherwise, into the facts as they exist."); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987) ("In 12(b)(1) proceedings, it has been long accepted that the judiciary may make `appropriate inquiry' beyond the pleadings to `satisfy itself on authority to entertain the case.'"); *Artis v. Greenspan*, 223 F. Supp. 2d 149, 154 (D.D.C. 2002).

1.   **General Jurisdiction Under D.C. Code § 13-334(a)**

The general jurisdiction provision for the District of Columbia is found at § 13-334(a) of the District of Columbia Code, and authorizes the courts in this jurisdiction to "exercise `general jurisdiction' over a foreign corporation as to claims not arising from the corporation's conduct in the District, if the corporation is `doing business' in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C. Cir. 2002). The "doing business" test of this statutory provision was found by the District of Columbia Circuit to be coextensive with the due process requirements of the Constitution and "requires an examination of the frequency and volume of the defendant's transactions with District of Columbia residents." *Id.* at 513. Thus, this Court may exercise general jurisdiction over a foreign corporation whose contacts with the District are

so continuous and systematic that it could foresee being haled into a court in the District of Columbia. *Id.* at 509.

For example, the defendant in Gorman was found to have continuous and systematic contacts with the District because "District residents use[d] its website to engage in electronic transactions with the [defendant]." *Id.* at 512. And "[a]s a result of their electronic interactions, [defendant] Ameritrade and its District of Columbia customers enter[ed] into binding contracts, the customers [became] the owners of valuable securities, and Ameritrade obtain[ed] valuable revenue." *Id.* at 512-513.

However, some presence in the District of Columbia is not alone grounds to exercise general jurisdiction in every situation.  For this "transacting business" section of the long-arm statute to apply, the defendant's contacts with this district must relate to the factual circumstances giving rise to the suit. *Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 974-75 (D.C. Cir. 1990).

In *Fandel v. Arabian Am. Oil Co.*, 345 F.2d 87 (D.C. Cir. 1965), the defendant was in the business "of producing, refining, and selling oil and gas" in two countries in the Middle East. The Circuit Court in Fandel held that the defendant's District of Columbia six-room office where five employees worked did not alone constitute "doing business" in the District. *Id.* at 88-89. The defendant's activities in the District of Columbia in Fandel were to "maintain continuing relationships with the State Department and other executive agencies of the United States Government . . . and with educational and international organizations, private and public . . .," to keep them apprized of what was occurring in the Middle East and the defendant's activities in that region. *Id.* at 88. The Court reasoned that this was not the type of District of Columbia

14

presence contemplated in § 13-334(a)'s "doing business" clause. *Id.* Rather, the Court recognized that "Washington presents many business organizations with special needs for a continuous and ponderable physical presence [here] . . . [and] the purpose of Congress was not to make that presence in every case a base for the assertion of personal jurisdiction." *Id.* at 89.

### 2.    CommPartners Has No Jurisdictional Presence In the District of Columbia

In the instant case, CommPartners has no presence in the District of Columbia.  It does not have offices within the District and it does not maintain a physical telecommunications network in the District of Columbia.  CommPartners does not have any wholesale customers in the District of Columbia and iIt does not directly transact any business with customers from the District of Columbia over its network.

Similarly, CommPartners has not commenced a telecommunications operation or business  in the District of Columbia; has no current plans to deploy network in D.C.; and instead will send its traffic to other carriers with a physical network presence in D.C. for termination. (Exh. A; ¶¶ 16-20)  Consequently, the frequency and volume of the defendant's transactions with District of Columbia residents is simply non-existent.

Equally important is the fact that the alleged access fees claimed to be owed by the plaintiff did not arise from business or personal contacts with the District of Columbia. They arose from the routing of calls in Massachusetts, New York, Pennsylvania, Delaware, and Florida. *Id.* at ¶21.  CommPartners does not meet the "doing business" requirement for jurisdiction under D.C. law.  Accordingly. the Court should dismiss this complaint for lack of jurisdiction on this basis.

### 3.  Due Process Requirements Demonstrate that Jurisdiction Is Lacking

Similarly, due process considerations mandate that this complaint be dismissed.  The due process clause limits a court's power to exercise personal jurisdiction over a nonresident. *Pennoyer v. Neff*, 95 U.S. 714, 24 L. Ed. 565 (1877).  A court cannot require a nonresident to defend in a forum which is not constitutionally "reasonable, in context of our federal system of government . . . ." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317(1945). "The Due Process Clause, by ensuring the 'orderly administration of the laws' . . . gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).  Accordingly, the general rule is that personal jurisdiction is proper only if the defendant's contacts with the forum allow the maintenance of a suit which "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. at 316.

This "minimum contacts" rule is not susceptible to mechanical application but will vary with the quality and nature of the defendant's activity. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). "The facts of each case must be weighed to determine whether the requisite affiliating circumstances are present." *Kulko v. Superior Court*, 436 U.S. 84, 92 (1978).   Nevertheless, the "defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Wilson*, 444 U.S. at 297. This connection arises when the defendant "purposefully directs" his activities at residents of the forum, *Keeton v. Hustler Magazine Inc.*, 465 U.S. 770 (1978), and not when

16

"those who claim some relationship with the nonresident defendant" simply act unilaterally, *Hanson v. Denckla*, 357 U.S. at 253.  In short, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs. Inc. v. Bell South Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000)(*quoting World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

In the case at bar, the evidence demonstrates that CommPartners does not have a physical presence in the District of Columbia..  CommPartners:

- does not have offices or a physical network in the District of Columbia;

- does not have any wholesale customers in the District of Columbia;

- does not directly transact any business with customers from the District of Columbia over its network.

- All of the alleged access charges claimed to be owed by PaeTec arose in Massachusetts, New York, Pennsylvania, Delaware, or Florida.  Thus, the alleged access fees owed did not arise from transactions within the District of Columbia.

(*Exh. A;* Declaration of David S. Clark at ¶¶ 16-18; 21).

CommPartners' conduct and connection with the District of Columbia does not meet the constitutional minima to support a conclusion that the company should reasonably anticipate being haled into court there.  CommPartner's has not purposefully directed its activities or services at residents of the District of Columbia.  CommPartners has not availed itself of the protections or benefits of D.C. law.  Accordingly, this Court should dismiss the complaint.

### C.    <u>Venue for this Complaint is Inappropriate in the District of Columbia</u>

Pursuant to Fed. R. Civ. P. 12(b)(3), a defendant may properly assert a claim of improper venue by responsive pleading or by motion.  For the convenience of parties and witnesses, and in

the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.  28 U.S.C. §§ 1404(a) and 1406(a).

Title 28 U.S.C. §1391 provides in pertinent part:

(a)  A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in:

(1)  a judicial district where any defendant resides, if all defendants reside in the same State,

(2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or

(3)  a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

As set forth herein, the claims of the plaintiff did not arise within the District of Columbia.  All of the alleged access charges claimed to be owed by PaeTec arose in Massachusetts, New York, Pennsylvania, Delaware, or Florida.  (Exh. A; ¶21)  Furthermore, as argued supra, personal jurisdiction over CommPartners is non-existent.  CommPartners does not reside in the District of Columbia and the events which has formed the basis of Paetec's complaint did not occur within the District of Columbia.  Commpartners activities do not meet the "doing business" requirment for long-arm jurisdiction under the D.C statute.  Consequently venue is improper within the District of Columbia.

Jurisdiction and venue, however, is also appropriate in the District of Nevada. First, the principal office of defendant is located in Las Vegas, Nevada.  The network for the company is located in Nevada.  Discovery on the factual allegations raised by Plaintiff in the Complaint will overwhelmingly involve witnesses employed by CommPartners in Nevada.  Any documentary

evidence sought from CommPartners is located in Las Vegas. Consequently, the judicial district with the strongest connection to the collection of the alleged monies owed is the District of Nevada, not the District of Columbia. The only apparent connection to the District of Columbia raised by Plaintiff is the fact that telephone calls from the PaeTec network might terminate in the District of Columbia from somewhere in the CommPartner network. Because venue over all of the claims raised by Plaintiff is clearly proper in Nevada, this Court should, at a minimum, transfer the action to the District of Nevada. There is no impediment to litigating this action in the District of Nevada. Generally speaking, venue must be established for each cause of action. Lamont v. Haig, 590 F.2d 1124, 1135 (D.C. Cir. 1978); Hayes v. RCA Service Co., 546 F. Supp. 661, 664 (D.D.C. 1982). In the instant case, venue as to any of the plaintiff's claims is not proper in the District of Columbia.

Moreover, the District of Columbia simply has no significant connection to the allegations concerning the access fees allegedly owed the plaintiff. The events that relate to most of the allegations in the Complaint took place in Nevada where CommPartners operates its network. Applying a commonsense appraisal of events having operative significance in the case leads to the conclusion that venue is simply not proper in the District of Columbia. Accordingly, this case should be dismissed for lack of venue, or alternatively, transferred to the District of Nevada in Las Vegas.

Federal law provides that when faced with a complaint, laying venue in the wrong district, the district court in which it was filed may, in the interest of justice, transfer it to a district in which it could have been brought. See 28 U.S.C. § 1406(a). Thus, should this Court deem it appropriate, it may transfer this action to the District of Nevada in Las Vegas, where the

first three prongs of the venue provision would be satisfied. Similarly, even if proper venue could

be said to exist in the District of Columbia, the Court could also transfer the case to the District

of Nevada under 28 U.S.C. § 1404(a)("For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought.")

## <u>CONCLUSION</u>

For the reasons set forth above, this case should be dismissed or alternatively transferred

to the U.S. District Court for the District of Nevada in Las Vegas.

Respectfully submitted,


*/s/ Stephen G. DeNigris, Esq.*
Stephen G. DeNigris, Esq.
D.C. Bar No. 440697
Attorney for the Defendant
2100 M Street N.W. Suite 170-283
Washington, D.C.  20037

Office:          (703)416-1036
Fax:             (703)416-1037

E-mail:          sgd853@aol.com

MARQUIS & AURBACH

*By: /s/ Nick D. Crosby, Esq.*
Nick D. Crosby, Esq. (pro hac vice)
Nevada Bar No. 8996
10001 Park Run Drive
Las Vegas, Nevada  89145
Attorney(s) for Defendant

Date:   May 2, 2008
         Washington, D.C.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

PAETEC COMMUNICATIONS, INC.              )
                                         )
                   Plaintiff,            )
                                         )
        v.                               )          Civil Action No. 08-cv-00397 (JR)
                                         )
                                         )
COMMPARTNERS, LLC                        )
                                         )
                   Defendant.            )
_____)


**O R D E R**

_____Upon consideration of the Defendant's Motion to Stay this Proceeding, Motion to Dismiss

for Lack of Personal Jurisdiction, Motion to Dismiss for Improper Venue and /or Motion to

Transfer the Case to the United States District Court for the District of Nevada in Las Vegas, the

Plaintiff's Response, all other papers filed and for such other good cause, it is

      **ORDERED** that the Defendant's Motion to Stay this action for the purpose of allowing

the Federal Communications Commission to address the issues raised by the parties herein, is

hereby **GRANTED / DENIED**; and it is further

      **ORDERED** that the Defendant's Motion to Dismiss this action for Lack of Personal

Jurisdiction is hereby **GRANTED / DENIED**; and it is further

      **ORDERED** that the Defendant's Motion to Dismiss for Improper Venue, is

hereby **GRANTED / DENIED;** and it is further

      **ORDERED** that the Defendant's Motion to Transfer this Case to the United States

District Court for the District of Nevada in Las Vegas, is hereby **GRANTED / DENIED**.


_____
UNITED STATES DISTRICT JUDGE


Dated: May \_\_\_\_\_, 2008
        Washington, D.C.  2008

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copying of the Notice was sent by Electronic Mail (E-mail) on the 2nd day of May 2008 to:

    Jeffrey J. Binder, Esq.
    Attorney for the Plaintiff
    The Watergate
    Suite 1107 North
    2510 Virginia Avenue, NW
    Washington, D.C.  20037

at j.j.binder@verizon.net.

          */s/ Stephen G. DeNigris, Esq.*
          Stephen G. DeNigris, Esq.

Paetec Communications v. CommPartners
Civil Action 08-cv-397 (JR)
Exhibit "A"

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| PAETEC COMMUNICATIONS, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-cv-00397 (JR) |
| | ) |
| | ) |
| COMMPARTNERS, LLC | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF DAVID S. CLARK IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS AND/OR MOTION TO TRANSFER

Pursuant to 28 U.S.C. ' 1746, David S. Clark, declares as follows:

1.      I am the Chief Executive Officer of CommPartners Holding company.

Commpartners Holding Company, is the parent company of CommPartners LLC. I have been

Chief Executive Officer since June 2003.

2.      I am making this declaration in support of CommPartner's Motion to Dismiss

and/or Motion to Transfer.

3.      This declaration is based on personal knowledge.

4.      CommPartners, LLC is a privately held company. It is organized as a Nevada

Limited Liability Company (LLC). It is headquartered at 3291 N. Buffalo, Suite 150, Las Vegas,

NV 89129.

5.      CommPartners, is a nationwide Internet Protocol (IP) based network operator

providing wholesale Voice over Internet Protocol (VoIP) and enhanced IP applications to

carriers, strategic partners, and Value Added Resellers (VARS).

6.      CommPartners Network Control Center is located at its Las Vegas, NV facility. The center is fully staffed 24 hours a day, 7 days a week monitoring both the CommPartners voice and data network. The NCC works directly with customers, vendors, and providers to resolve network and service issues.

7.      The CommPartners' network is designed to connect public and private IP networks with the Public Switched Telephone Network (PSTN). The Company provides the network needed for Voice-Over- Internet Protocol (VoIP) providers to originate and terminate IP-based communications, as well as allow for the termination of traditional circuit-switched telephone calls.

8.      The traffic carried over this network is comprised of primarily information services traffic such as VoIP, as well as interstate and intrastate Local Access Transport Area (LATA) and local traffic. An LATA is a geographical area in which the local telephone company is allowed to carry not only local calls, but long distance toll calls as well.

9.      CommPartners' physical network is a " hub-centric topology" consisting of switching centers in Las Vegas, Chicago, Atlanta, and New York (Super-PoPs). These switching centers are colocation points situated in highly sophisticated environments where large numbers of network providers meet for interconnection among their networks. At these locations, CommPartners has placed softswitch equipment, routers and border control devices.

10.     When a VoIP calls is placed over the CommPartners' network, it is sent to the closest Super-PoP and if need be, transported across the CommPartners private VoIP backbone to the called destination. Unlike almost all other VoIP network service providers, CommPartners does not use the public Internet for inter-continental transport of VoIP calls.

2

11.    CommPartners uses various Internet backbone carriers to effectively place our Super-POP's Aone hop@ away from all major Internet backbone carriers.

12.    Thus, if the called party were also a VoIP customer, the call would remain on IP and could be routed to one of the Internet backbone providers to its termination point. If the called party uses traditional voice service, the call is converted to voice protocol and routed to that party through the nearest party Regional Bell Operating Companies (RBOC), incumbent local carrier (ILC), competitive local exchange carrier (CLEC) or wireless carrier's local telephone switch that serves the called party.

13.    Paetec terminated traffic to its end users as originated by CommPartners. Payment for this termination is governed by tariffs, although CommPartners does not believe that PaeTec's tariffs are applicable to VoIP-originated traffic.

14.    CommPartners' service is also present in areas served by a local exchange telecommunications company, that are required by the Telecommunications Act of 1996, P.L. 104-104, to interconnect their networks with competitive local exchange carriers. (CLEC) A CLEC is a company certificated by an appropriate regulatory commission to provide local exchange service within another telecommunications carriers' franchised area. CommPartners is a CLEC.

15.    When CommPartners wants to expand its IP coverage in an area it does not have a physical network in, it may enter into CLEC agreements with the local telecommunications company or an Interconnection Agreement Between Services Providers to obtain access in that market.

16.    CommPartners does not have a physical presence in the District of Columbia.

3

17.     It does not have offices and it does not have a physical network in the District of Columbia.

18.     CommPartners does not have any wholesale customers in the District of Columbia. It does not directly transact any business with customers from the District of Columbia over its network.

19.     Commpartners has a CLEC license in the District of Columbia but that license is not being used by CommPartners. Indeed, in CommPartners' Annual Report we note that we have not commenced operations in the District o f Columbia.

20.     In the same vein, CommPartners has no current plans to deploy network in D.C. and instead will send traffic to other carriers with physical network presence in D.C. for termination

21.     All of the alleged access charges claimed by PaeTec arose in Massachusetts, New York, Pennsylvania, Delaware, or Florida. Thus, the alleged access fees owed did not arise from transactions within the District of Columbia.

22.     As an aside, CommPartners does not believe that it owes any access fees to PaeTec.

23.     It is also patently unfair to require CommPartners to defend a lawsuit in the District of Columbia when our operation is centered in Las Vegas, Nevada, over 2000 miles away.

24.     Indeed, our offices, assets, witnesses and records are located in Las Vegas, Nevada.

25.     Discovery on the factual allegations raised by plaintiff in the complaint will

4

overwhelmingly involve witnesses who are employed by CommPartners in Las Vegas, Nevada.

26.     The judicial district with the strongest connection to the collection of monies allegedly owed is the District of Nevada, not the District of Columbia.

27.     The only apparent connection to the District of Columbia raised by Plaintiff is the fact that telephone calls originating from the CommPartners' network may terminate in the District of Columbia after being routed through the PaeTec network in New York. Given the small size of the District of Columbia, the total number of calls terminated to D.C. via PaeTec's network, if any, is likely de minimus.

28.     The District of Columbia simply has no significant connection to the allegations of the plaintiff.

29.     Nor does CommPartners transact business within the District of Columbia or avail itself of the protections of the District of Columbia law.

30.     The frequency and volume of CommPartners' contacts with the District of Columbia is virtually non-existent. Consequently, CommPartners had no reasonable expectation that it would be haled into court in the District of Columbia.

31.     For the convenience of parties and witnesses, and in the interest of justice, CommPartners respectfully requests that this case be transferred to the District of Nevada in Las Vegas.

5

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 2nd day of May 2008

David S. Clark

6