IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SOUTHWESTERN BELL TELEPHONE, L.P, *et al.*, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | Case No.: 4:04CV1573CEJ |
| GLOBAL CROSSING LIMITED, *et al.*, | )<br>) |
| Defendants. | ) |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO VACATE STAY**

More than two years after this Court's primary jurisdiction referral to the Federal Communications Commission ("FCC"), the agency has still failed to rule on plaintiffs' petition for a declaratory ruling. Nor, contrary to Global Crossing's unsupported assertion, has the FCC indicated that it might issue a decision within the foreseeable future. The result is that plaintiffs have been stymied in their efforts to stop defendants' evasion of lawfully tariffed access charges – evasion that continues to cost plaintiffs millions of dollars in unpaid access charges with each passing month. The Court should put an end to the delay and vacate the stay.

Global Crossing "agrees that the doctrine of primary jurisdiction is not and should not be used as a doctrine of futility." GC Opp. 11.[1] NuVox grudgingly acknowledges that "[d]elay is

---

[1] This Reply abbreviates the relevant pleadings as follows: Memorandum in Support of Plaintiffs' Motion to Vacate Stay (filed Apr. 16, 2008) ("Pltfs. Br."); Memorandum in Opposition to Plaintiffs' Motion to Vacate Stay (filed May 2, 2008) ("GC Opp."); Opposition of Defendants McLeod USA, Inc., et al. to Plaintiffs' Motion to Vacate Stay (filed May 2, 2008) ("McLeod Opp."); NuVox Defendants' Opposition to Motion to Vacate Stay (filed May 2, 2008) ("NuVox Opp.").

unfortunate." NuVox Opp. 5. And McLeod acknowledges that "courts are required to balance concerns arising from delay against the [other primary jurisdiction] factors." McLeod Opp. 3. Yet all insist that, in this case, delay is unobjectionable. Those opportunistic claims should be rejected out-of-hand. This Court is well suited to resolve the case before it. In light of the extensive delay since the Court first referred this matter to the FCC – and in the absence of any indication that an FCC order is forthcoming – the Court should lift the stay and move forward without delay.

    **A.**    **This Court is Well-Equipped to Decide the Issues Presented Here**

Global Crossing claims that this Court is not suited to decide the issues presented in this case. *See* GC Opp. 5; *see also* McLeod Opp 2-3; Nuvox Opp. 1-2. That is so, the theory goes, primarily because, in Global Crossing's view, there is uncertainty over whether carriers may be liable for access charges even if they are not directly interconnected with the terminating LEC. *See* GC Opp. 2 (citing Order[2] at 7).

Since the stay was granted, however, a federal district court in South Dakota addressed exactly this question. *See* Pltfs. Br. 10. In 2007, that court held that federal tariff claims against Global Crossing could proceed on the theory that the constructive ordering doctrine applies and permits the LEC to collect tariffed access charges from Global Crossing, even where Global Crossing is not directly interconnected with the LEC. *See* Order, *Alliance Communications Cooperative, Inc. v. Global Crossing Telecomms., Inc.*, Case No. 4:06-cv-04221-KES (D.S.D. July 2, 2007) (attached to Pltfs. Br. as Ex. F). In doing so, the court applied other federal court precedents that likewise construed the constructive ordering doctrine to enable terminating carriers to collect access charges from entities not directly interconnected with the plaintiff. *See*

---

[2] Memorandum and Order (Feb. 7, 2006) ("Order") (attached to Pltfs. Br. as Ex. A).

*id.* at 7-16 (discussing, *inter alia*, *Advamtel, LLC v. AT&T Corp.*, 118 F. Supp. 2d 680 (E.D. Va. 2000), and *AT&T Communications of the Midwest v. Iowa Utils. Bd.*, 687 N.W. 2d 554, 561 (Iowa 2004)).

The *Alliance* decision makes clear that this Court is amply capable of applying the FCC's *IP-in-the-Middle Order*[3] where, as here, the defendant is not directly interconnected with the terminating LEC. As this Court has observed, the FCC made clear that interexchange carriers are liable for terminating access charges "'whether only one interexchange carrier uses IP transport or instead multiple service providers are involved in providing IP transport.'" Order at 7 (quoting *IP-in-the-Middle Order* ¶ 19); *see also id.* at 4 ("Access charges are due whether the interexchange carrier provides its own IP voice services or contracts with another provider to do so.") (citing *IP-in-the-Middle Order* ¶ 18). The Court need only apply that holding in conjunction with the constructive ordering doctrine to decide the principal issues in this case. *See* GC Opp. 2 ("the key issue in this case [is] whether an entity that uses IP transport but has no direct connection with a terminating LEC and specifically contracts with other carriers to provide terminating services for IP transport can be liable under the terminating LEC's access tariffs"). Particularly in light of the extended delay since this Court referred the matter to the FCC, there is simply no need to await the FCC's guidance any longer before applying these settled principles to this case.

McLeod (at 2) and NuVox (at 2) suggest that federal courts lack sufficient expertise in determining each defendant's role in the transmittal of calls and technical aspects of call routing. That argument is meritless. Discovery will show the defendants' respective roles and clarify any

---

[3] Order, *Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges*, 19 FCC Rcd 7457 (2004) ("*IP-in-the-Middle Order*").

aspects of call routing relevant to this case. Federal courts routinely handle cases of far more technical complexity than this one, which at bottom simply seeks to apply filed tariffs to calls that were improperly routed in order to evade those tariffs. *See generally Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002) (primary jurisdiction doctrine is not "intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit") (internal quotation marks omitted).

Defendants also rely on pending FCC rulemaking proceedings in claiming the stay should remain in place. *See* GC Opp. 7-8 (citing *generally* Notice of Proposed Rulemaking, *Developing a Unified Intercarrier Compensation Regime*, 16 FCC Rcd 9610 (2001); Notice of Proposed Rulemaking, *IP-Enabled Services*, 19 FCC Rcd 4863 (2004) ("*IP-Enabled Services NPRM*"); Further Notice of Proposed Rulemaking, *Developing a Unified Intercarrier Compensation Regime*, 20 FCC Rcd 4685 (2005)); McLeod Opp. 2 & n.4; NuVox Opp. 2. But this case seeks to apply *existing* law to defendants' evasion of access charges. The rulemaking proceedings on which defendants rely involve proposed changes to existing rules *that will operate only prospectively*. McLeod itself concedes as much. *See* McLeod Opp. 2 n.4 (characterizing intercarrier compensation rulemaking proceeding as concerning "what rule *changes* might be necessary" and whether "*new* interconnection . . . requirements" will be imposed) (emphases added). And the FCC has made the same point, explaining that, "[b] y seeking comment on whether access charges should apply to the various categories of service identified by the

4

commenters, we are *not* addressing whether charges apply or do not apply under *existing* law." *IP-Enabled Services NPRM*, ¶ 61 (emphases added).[4]

At least as important, the FCC has made clear that the services at issue here – IP-in-the-middle traffic – are subject to access charges under existing rules. *See* Order at 5 ("The FCC issued the [*IP-in-the-Middle Order*] to provide clarity to the industry pending the outcome of [its] comprehensive rulemaking proceedings."). In this case, AT&T[5] seeks relief under those existing rules. That the FCC may one day change them *prospectively* has no bearing on AT&T's right to claim damages resulting from defendants' failure to adhere to those existing rules in the past.

### B.    Further Delay is Unwarranted

The long delay in awaiting FCC action, combined with the lack of any indication by the agency as to when it will rule, warrants vacatur of the stay at this time. As the Eighth Circuit has explained, courts should be "reluctant" to invoke the doctrine in the first place "because added expense and undue delay may result." *Access Telecomms. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 608 (8th Cir. 1998); *see also* Pltfs. Br. 7-8; GC Opp. 11 (agreeing that primary jurisdiction is not "a doctrine of futility"); McLeod Opp. 3 ("courts are required to balance

---

[4] Global Crossing also relies (at 7) on the FCC's statement in an order addressing different issues that the agency would not prejudge "the classification of VoIP services." Memorandum Opinion and Order, *Time Warner Cable Request for Declaratory Ruling*, 22 FCC Rcd 3513, ¶ 17 (2007) (attached as Ex. B. to GC Opp.). With respect to the traffic relevant to this case, however, the FCC has conclusively ruled in the *IP-in-the-Middle Order* that IP-in-the-Middle traffic is both classified as a telecommunications service and subject to access charges. *See* Order at 4-5 (explaining that the FCC rejected the argument that IP-in-the-Middle traffic is an enhanced service exempt from access charges, and that it had addressed this question separately from "to provide clarity to the industry"). That the FCC is considering the classification of *other* types of VoIP traffic is irrelevant here.

[5] At the time plaintiffs filed the case, their parent holding company was SBC Communications Inc. SBC Communications Inc. has since acquired AT&T Corp. and changed its name to AT&T Inc.

5

concerns arising from delay against the factors" of a need for agency expertise and risk of inconsistent rulings); NuVox Opp. 5 (acknowledging that this extended "[d]elay is unfortunate").[6]  Where, as here, the agency fails to respond to a straightforward primary jurisdiction referral *for years*, it is appropriate for the court to withdraw the referral and to proceed with the case.

Global Crossing claims (at 9) that "the length of the stay in this case is well within the norm." Global Crossing acknowledges (at 10-11), however, that it successfully urged this Court to vacate a stay when the FCC had failed to act within 18 months following the Court's primary jurisdiction referral. Indeed, Global Crossing's proposed "norm" in that case was *six months*. *See* Pltfs. Br. 8-9. Having successfully pressed that position with this Court when Global Crossing was seeking relief against AT&T, it is disingenuous for Global Crossing to counsel further delay when the shoe is on the other foot.

Global Crossing argues (at 8) that some "delay may be necessary to achieve the desired result of agency expertise and national uniformity of industry practice," citing *Red Lake Band of Chippewa Indians v. Barlow*, 846 F.2d 474, 476 (8th Cir. 1988). But "some delay" should not mean indefinite and unreasonable delay, as is now the case here. Moreover, the court in *Red Lake Band* made clear that the district court should not permit delay to deprive the plaintiffs of their day in court and should vacate the stay if the agency fails to act within a reasonable time. *See id.* at 476-77 ("To assure that the Secretary reaches a decision promptly, the district court shall retain jurisdiction over this matter and monitor its progress."). And the First Circuit has

---

[6] Global Crossing suggests (at 7-8) that the FCC "is actively considering the issues presented in [AT&T]'s Petition for a Declaratory Ruling." To the contrary, the FCC's only response to date is that "the petition remains pending" and the FCC has "no further update for you at this time." Letter from Dana Shaffer, Chief, Common Carrier Bureau, FCC, to Robert Quinn, Sr. Vice President, Federal Regulatory, AT&T Services, Inc., WC Docket No. 05-276 (Jan. 31, 2008) (Reply Ex. A hereto).

6

made clear that a court should "vacate the referral order and decide the matter itself . . . if the agency fails to rule within a reasonable amount of time." *American Auto Mfrs. Ass'n v. Massachusetts Dep't of Env'l Prot'n*, 163 F.3d 74, 82 (1st Cir. 1998).

Defendants next cite cases suggesting that agency delay is "irrelevant," *Waldmann v. Cingular Wireless LLC*, 2007 U.S. Dist. LEXIS 96461, at *13 n.5 (C.D. Cal. Nov. 15, 2007) (attached as Ex. C to GC Opp.), or that a primary jurisdiction stay may be of "indefinite length," *Cox Oklahoma Telecom, LLC v. Southwestern Bell Tel., LP*, 2007 U.S. Dist. LEXIS 20692 (W.D. Ok. Mar. 22, 2007) (attached as Ex. D to GC Opp.). *See* GC Opp. 9-10; NuVox Opp. 5-6; *see also* McLeod Opp. 3 n.7. To the extent those decisions suggest that agency delay is irrelevant or of minimal weight, they are erroneous and contrary to controlling Eighth Circuit precedent cited above, as well as court of appeals decisions in other circuits. *See Red Lake Band*, 846 F.2d at 476-77; *Access Telecomms.*, 137 F.3d at 608; *see also American Auto*, 163 F.3d at 86-87 ("if no agency ruling is forthcoming within 180 days from the date this opinion issues, the parties shall so notify this court. We will then decide the issues before us without the EPA's guidance"); *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 206 (5th Cir. 1988) (ordering district court to refer matter to agency, but providing that if agency did not issue ruling within 180 days, district court should proceed to resolve the matter itself); *National Communications Ass'n v. AT&T*, 46 F.3d 220, 225 (2d Cir. 1995) (reversing primary jurisdiction referral where, *inter alia*, the FCC was expected to take two to five years to resolve a tariff issue; noting that "'[a]gency decisionmaking often takes a long time'" and the delay "'imposes enormous costs on individuals, society, and the legal system'") (quoting 2 Kenneth C. Davis, et al., Administrative Law Treatise § 12.1, at 211 (3d ed. 1994)); Pltfs. Br. 9. That principle is also contrary to the principle Global Crossing itself advocated to this Court. *See* Plaintiff's Report on Status of FCC

7

Proceedings and Request for Dissolution of Stay, *Global Crossing v. SWBT*, Case No. 4:04-cv-0319-ERW, at 3 (E.D. Mo. filed June 24, 2005) ("More than one year has passed and the FCC has not resolved the issue in a timely fashion") (attached to Pltfs. Br. as Ex. C.).[7]

Global Crossing suggests (at 11) that further delay will not be prejudicial. That is incorrect. The longer plaintiffs have to wait to prove their case, the more difficult it could be to do so because memories may fade, employee witnesses on both sides could change jobs or leave their employer altogether, and evidence could be harder to gather, thus making it more difficult for plaintiffs to obtain the necessary evidence of defendants' practices once discovery finally commences. *See*, *e.g.*, *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 857-58 (8th Cir. 1978).[8]

---

[7] In another case relied on by defendants (*see* GC Opp. 11), the agency had indicated that action would be forthcoming or had already issued decisions and was actively considering further questions. *See Waudby v. Verizon Wireless Servs., LLC*, 2007 U.S. Dist LEXIS 38581, *23 (D.N.J. May 25, 2007) (statement by FCC Chairman that the agency hoped to act "in the next few months") (internal quotation marks omitted) (attached as Ex. G to GC Opp.). Nuvox relies (at 3-5) on *Chicago, Rock Island & Pacific Railroad Co. v. Furniture Forwarders of St. Louis, Inc.*, 420 F.2d 385 (8th Cir. 1970), but there the issue was the reasonableness of rates charged under a tariff. As the court explained, the reasonableness or unreasonableness of tariffed rates has long been held to be an issue that the relevant agency should decide in the first instance. *See id.* at 387 ("The issue is the reasonableness of the railroad rate involved, and so far as we know every court holds that this is a subject for initial determination by the Commission."); *United States v. U.S. Steel Corp.*, 645 F.2d 1285, 1293 (8th Cir. 1981) ("the courts must enforce a rate, even though alleged to be discriminatory, until the matter of discrimination has first been decided by the Commission") (citing *Texas & Pacific Ry. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 439 (1907)). Here, by contrast, there is no claim that plaintiffs' access charges are unreasonable; rather, the question is whether defendants can evade those charges through the same routing scheme addressed in the *IP-in-the-Middle Order*.

[8] In all events, the court should reject Global Crossing's suggestion (at 11-12 n.6) to dismiss the complaint without prejudice. First, because a favorable ruling by the FCC would still require plaintiffs to prosecute this action, there is no reason to dismiss it and require plaintiffs to refile. Second, dismissal could create prejudicial statute of limitations problems for plaintiffs. *See Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (dismissal inappropriate if a party would be "unfairly disadvantaged"); Memorandum and Order, *Southwestern Bell Tel., L.P. v. Vartec Telecom, Inc.*, No. 4:04-CV-1303-CEJ (E.D. Mo. Sept. 29, 2005) (granting reconsideration of earlier dismissal without prejudice, and instead granting temporary stay in order to prevent possible prejudice to plaintiffs' claims by the running of the statute of limitations) (Reply Ex. B hereto).

McLeod (at 4, 7) faults plaintiffs for originally filing this suit in federal court rather than at the FCC. As the FCC made clear in the *IP-in-the-Middle Order*, however, the agency does not "act as a collection agent for carriers with respect to unpaid tariffed charges." *IP-in-the-Middle Order* ¶ 23 n.93. Plaintiffs thus followed the FCC's direction in that order to "file any claims for recovery of unpaid access charges in state or federal courts, as appropriate." *Id.* Even if the FCC were to rule favorably on the declaratory petition, plaintiffs will still have to prosecute the action here to recover their unpaid tariff charges. *See* GC Opp. 12 ("If the FCC rules in [AT&T]'s favor, [AT&T] can proceed with its litigation in this court.").[9]

Finally, and in view of the unreasonably long delay since entry of the stay, the supposed risk of inconsistent rulings is no obstacle to vacatur. *See* GC Opp. 4; McLeod Opp. 2; Nuvox Opp. 5. If the FCC were at some point to rule on AT&T's declaratory petition, then the Court could incorporate the FCC's ruling; lifting the stay would in no way prevent the FCC from addressing the issues pending before it. Indeed, the primary risk here is not inconsistent rulings, but no rulings at all. At this stage, the FCC's delay counsels action by the Court, not the sanctioning of yet more delay.

## CONCLUSION

For the foregoing reasons, and those in plaintiffs' opening brief, the Court should withdraw its primary jurisdiction reference and lift the accompanying stay.

---

[9] The FCC's views could also be invited in an amicus brief. *See* Pltfs. Br. 11; *id.* Ex. C, at 5 (same argument by Global Crossing in successfully obtaining vacatur of stay by this Court).

Respectfully submitted,

/s/ Colin S. Stretch
| | |
|---|---|
| John F. Medler, Jr. (Mo. Bar #38533) | Colin S. Stretch |
| One SBC Center Room 3558 | Scott K. Attaway |
| St. Louis, MO 63101 | Kellogg, Huber, Hansen, |
| (314) 235-2322 (office) |   Todd, Evans & Figel, P.L.L.C. |
| (314) 210-4745 (cell) | 1615 M Street, N.W., Suite 400 |
| (314) 247-0881 (fax) | Washington, D.C. 20036 |
| e-mail:  mail: jm9992@att.com | (202) 326-7900 (office) |
| | (202) 326-7999 (fax) |

*Counsel for Plaintiffs*

May 12, 2008

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of May 2008, I electronically filed the foregoing Motion to Vacate Stay, along with the accompanying Memorandum in Support and Proposed Order, with the Clerk of the Court using the CM/ECF system that sent notification of such filing to the following:

Jeffrey P. Cunard, **jpcunard@debevoise.com**
Jonathan S. Frankel, **jsfrankel@bingham.com**
Martin M. Green, **mann@stlouislaw.com**
Joe D. Jacobson, **jacobson@stlouislaw.com**
Ky E. Booth Kirby**, ky.kirby@bingham.com**
Kevin C. Lombardi, **klombardi@debevoise.com**
Paul J. Puricelli**, ppuricelli@stoneleyton.com**
Thomas P. Rosenfeld**, trosenfeld@koreintillery.com**
Michael J. Shortley**, III**, **michael.shortley@globalcrossing.com**
Erik O. Solverud**, esolverud@spencerfane.com**


                                                    /s/ Krystal Au

# Federal Communications Commission
## Wireline Competition Bureau
## Office of the Bureau Chief

445 12th Street  
Washington, DC 20554

Telephone: (202) 418-1500  
Fax: (202) 418-2825

# Fax Cover Sheet

To: Robert W. Quinn  
From: Dana Shaffer  
Fax: 214-486-8061  
Pages: 2  
Phone: 202-457-3881  
Date: 1/31/08  
Re: WC Docket No. 05-276  
cc:

☐ Urgent  ☐ For Review  ☐ Please Comment  ☐ Please Reply  ☐ Please Recycle

**Confidentiality Note:**

The information contained in this fax is confidential and legally privileged information, intended only for the use of the individual or entity specifically address to above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you receive this fax in error, please notify the sender immediately by telephone at (202) 418-1500 and return the original transmission to 445 12th Street, S.W. Washington, D.C. 20554. Thank you.

# Federal Communications Commission
445 12ᵀᴴ Street SW, Washington, DC 20554

January 31, 2008

Robert W. Quinn, Jr.
AT&T Services, Inc.
Sr. Vice President
1120 20th Street, NW, Ste 1000
Federal Regulatory Washington, D.C. 20036

Re:   AT&T Petition for Declaratory Ruling That Unipoint Enhanced Services, Inc. d/b/a PointOne and Other Wholesale Transmission Providers Are Liable for Access Charges, WC Docket No. 05-276

Dear Mr. Quinn:

This is to confirm my response to your letter of January 8, 2008, asking that I notify AT&T by January 21, 2008, if the Commission plans to take action in the above-referenced docket.

As you and I discussed prior to January 21, 2008, the petition remains pending. Further, if and to the extent an issue properly raised in AT&T's petition is not addressed by existing Commission precedent, such issue would require full Commission action. A complete listing of all items in front of the Commission on circulation is publicly available at http://www.fcc.gov/fcc-bin/circ_items.cgi. I have no further update for you at this time.

Sincerely,

Dana R. Shaffer
Chief
Wireline Competition Bureau

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SOUTHWESTERN BELL )
TELEPHONE, L.P., et al., )
                              )
        Plaintiffs, )
                              )
    vs.                       )     No. 4:04-CV-1303 (CEJ)
                              )
VARTEC TELECOM, INC., et al., )
                              )
        Defendants. )

### MEMORANDUM AND ORDER

This matter is before the Court on plaintiffs' motion to amend judgment pursuant to Rules 59(e) and 60(b), Fed.R.Civ.P. On August 23, 2005, the Court dismissed plaintiffs' complaint without prejudice in deference to the primary jurisdiction of the Federal Communications Commission (FCC). Plaintiffs ask the Court to amend the prior order to stay the action rather than dismiss it. Defendants oppose the motion and the issues are fully briefed.

Plaintiffs in this action are ten Local Exchange Carriers (LECs) that provide telecommunication services. Defendant VarTec Telecom, Inc. (VarTec) is an interexchange carrier (IXC) that provides long-distance telephone service. The UniPoint[1] and Transcom[2] defendants are Least Cost Routers (LCRs) with whom VarTec contracts to transmit long-distance telephone traffic in Internet Protocol (IP) format. Plaintiffs allege that defendants delivered

---

[1]UniPoint Enhanced Services, Inc. (d/b/a PointOne), UniPoint Services, Inc., and UniPoint Holdings, Inc.

[2]Transcom Enhanced Services, LLC, Transcom Communications, Inc., and Transcom Holdings, LLC,

long-distance phone calls in IP format to local rather than long-distance facilities in order to avoid paying terminating access charges mandated by federal and state tariffs.

On April 21, 2004, the FCC determined that all interexchange carriers providing IP telephony are required to pay access charges for calls that begin and end on the public switched telephone network (PSTN). <u>Petition for Declaratory Ruling that AT&T's Phone-to-Phone IP Telephony Services Are Exempt from Access Charges</u>, 2004 WL 856557, 19 F.C.C.R. 7457, at ¶ 12 (Order April 21, 2004) (<u>AT&T Access Charge Order</u>). Plaintiffs filed this action in reliance on the FCC's ruling, contending that the defendants act in concert to provide a service identical to the one addressed by the FCC. The UniPoint defendants argued that the FCC ruling obligates only interexchange carriers to pay access charges and plaintiffs did not allege that the LCRs are interexchange carriers. On August 23, 2005, the Court entered an order deferring to the FCC on the issue of whether LCRs are interexchange carriers in the transmission of IP telephony. The Court then dismissed plaintiffs' claims against the UniPoint defendants, Transcom Holdings, LLC, and Transcom Communications, Inc., without prejudice.[3]

In their motion to amend, plaintiffs note that the FCC has no jurisdiction to adjudicate tariff collection actions. <u>See</u> <u>AT&T Access Charge Order</u> at ¶ 23 n.93. Thus, in the event that

---

[3]The Court also ordered the Clerk of Court to administratively close the case as to defendants VarTec and Transcom Enhanced Services, who are in bankruptcy proceedings and as to whom the automatic stay of 11 U.S.C. § 362 was in effect.

-2-

plaintiffs receive a favorable ruling from the FCC, they will be required to return to court in order to collect lost tariff revenues. Plaintiffs argue that dismissal of this action without prejudice does not toll the statutes of limitations on their collection claims and ask the Court to enter a stay rather than dismiss their action.[4]

Once a district court determines that primary jurisdiction rests with the FCC, the court has discretion either to stay the case and retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice. Access Telecommunications v. Southwestern Bell Telephone Co., 137 F.3d 605, 609 (8th Cir. 1998). The Court agrees with plaintiffs that they will be unfairly disadvantaged by the foreclosure of their claims due to the running of the statute of limitations. The Court thus will modify the prior ruling to stay, rather than dismiss, the action.

On September 19, 2005, plaintiffs filed with the FCC a petition for declaratory ruling that the UniPoint and Transcom defendants are liable for access charges. In order to ensure that the FCC acts promptly on their petition, plaintiffs ask the Court to limit the stay in this matter to six months. Plaintiffs' proposed course of action does not address the reasons for the

---

[4]Plaintiffs' request for a stay as an alternative to dismissal appeared in footnote 23 of their opposition to defendants' motions to dismiss. Thus, the Court was mistaken when it stated that no party had requested a stay and reconsideration of the issue is appropriate.

Court's deferral in the first place: the risk of inconsistent results among courts and with the Commission which, in addition to plaintiffs' petition, is conducting proceedings concerning IP-enabled services. See In the Matter of IP-Enabled Services, FCC No. 04-28 (Notice of Proposed Rulemaking, March 10, 2004 at ¶ 61). The Court believes the better course of action is to ask the parties to submit a status report in six months.

Defendants argue that, in the event the Court amends the dismissal order, it should also review the merits of their motions to dismiss for lack of personal jurisdiction or for failure to state a claim. These motions were denied as moot when the Court dismissed the case. The Court will modify the order to deny the motions without prejudice so that defendants may reassert their arguments in the event that the stay is lifted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to amend judgment [#98] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that pages 9 and 10 of the Memorandum and Order entered on August 23, 2005, [#97] are amended as follows:

> **IT IS HEREBY ORDERED** that the motion of UniPoint Holdings, Inc., UniPoint Services, Inc., and UniPoint Enhanced Services, Inc., to dismiss for failure to state a claim or in deference to the primary jurisdiction of the Federal Communications Commission [#57] is **denied.**
>
> **IT IS FURTHER ORDERED** that this matter is **stayed** pending determination by the Federal Communications Commission of the issues raised in plaintiffs' petition for declaratory ruling.
>
> **IT IS FURTHER ORDERED** that the motion of the UniPoint defendants to transfer the case to the Northern District of Texas [#60] is **denied without prejudice.**

**IT IS FURTHER ORDERED** that the motion of Transcom Enhanced Services, LLC, and Transcom Holding, LLC, to dismiss for lack of jurisdiction [#63] is **denied without prejudice**.

**IT IS FURTHER ORDERED** that the motion of Transcom Communications, Inc., to dismiss for failure to state a claim [#85] is **denied without prejudice.**

**IT IS FURTHER ORDERED** that plaintiffs shall file a status report within six months of the date of this order or upon determination by the Federal Communications Commission of their petition for declaratory ruling, whichever is earlier.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 29th day of September, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PAETEC COMMUNICATIONS, INC.     )

                Plaintiff,     )

                           )

        v.     )   C.A. No. 1:08 - cv – 00397 (JR)

                           )

COMMPARTNERS, LLC     )

                Defendant.     )

_____ )

**PROPOSED ORDER**

IT IS HEREBY ORDERED THAT

the Defendant CommPartners Motion to Dismiss is denied.

SO ORDERED, this___ day of ___, 2008

_____

The Honorable James Robertson