UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PAETEC COMMUNICATIONS, INC.          )

                        Plaintiff,          )

                                 )

            v.          )    C.A. No. 1:08 - cv – 00397 (JR)

                                 )

COMMPARTNERS, LLC          )

                    Defendant.          )

_____ )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS, TRANSFER, OR STAY**

Jeffrey J. Binder, Esq.
D.C. Bar #475821
The Watergate
2510 Virginia Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 965-0199
E-mail: j.j.binder@verizon.net

ATTORNEY FOR PLAINTIFF PAETEC
COMMUNICATIONS, INC.

## TABLE OF CONTENTS

INTRODUCTION

1

FACTUAL BACKGROUND

3

  The Complaint and Service of Process

3

  CommPartners' Motion

3

  Plaintiff PAETEC

3

  Defendant CommPartners

4

  The Nature of the Telephone Calls at Issue

5

ARGUMENT

6

I.    COMMPARTNERS PURPOSEFULLY AVAILS ITSELF OF THE PRIVILEGE OF CONDUCTING BUSINESS IN THE DISTRICT OF COLUMBIA. ACCORDINGLY, IT IS SUBJECT TO GENERAL PERSONAL JURISDICTION UNDER D.C. CODE § 13-334(a).

6

    A.    Standard of Review for the Motion to Dismiss

6

    B.    By Holding a Certificate of Authority to Do Business Under the Business Corporation Act of the District of Columbia, CommPartners Is Subject to Personal General Jurisdiction In the District of Columbia.

6

    C.    CommPartners' Activities, Purposefully Directed at Providing Its Telecommunications Services in the District of Columbia, Demonstrate That It Must Expect Being Subject to Suit Here.

10

II.    VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1391(b)(1).

12

III.    THE CASE SHOULD NOT BE TRANSFERRED TO THE DISTRICT OF NEVADA UNDER EITHER 28 U.S.C. § 1406(a) OR 28 U.S.C. § 1404(a).

13

A. Since venue lies in the District of Columbia, 28 U.S.C. § 1406(a) does not apply.

13

B. CommPartners has failed to satisfy its burden as the moving party for transfer under 28 U.S.C. § 1404(a)

13

1. The Legal Standard for Section 1404(a)

13

2. Analysis of the Relevant Private Factors for a Transfer to the District of Nevada shows  that the motion to transfer is meritless.

15

3. Analysis of the Relevant Public Interest Factors for a Transfer to the District of Nevada Shows That the Motion to Transfer is Meritless.

16

IV.    THE DOCTRINE OF PRIMARY JURISDICTION IS INAPPLICABLE.    16

A. The Primary Jurisdiction Doctrine

16

B. The FCC Holds That The proper Forum for Recovery of Unpaid Access Charges is the Federal District Court.

18

C. FCC Precedent Makes Clear That the Issue To Be Addressed Is Within This Court's Conventional Expertise and Does Not Require Further Exercise of the FCC's Expertise.

19

D. The FCC's Record of Unreasonable Delays in Responding to Primary Jurisdiction Referrals, Especially in the VoIP area, Weighs Heavily Against Referral In the Instant case.

24

CONCLUSION    27

Plaintiff PAETEC Communications, Inc. ("Plaintiff" or "PAETEC"), respectfully submits this Memorandum of Points and Authorities in Opposition to Defendant CommPartners, LLC's ("Defendant" or "CommPartners") Motion to Stay, Motion to Dismiss and/or Motion to Transfer ("Motion").

## INTRODUCTION

PAETEC seeks payment for CommPartners' use of PAETEC's local telephone network to complete long distance calls made to PAETEC's customers. Compl. ¶1 PAETEC's service to CommPartners is called terminating exchange access service. PAETEC's bills to CommPartners for this service reflect the rates in PAETEC's tariffs filed at the Federal Communications Commission ("FCC") and numerous state regulatory commissions. PAETEC's FCC tariff applies to interstate calls. Almost all of PAETEC's charges involved in this case concern PAETEC's interstate tariff filed at the FCC.

In response to PAETEC's Complaint, CommPartners moves, alternatively, for dismissal, transfer, or stay. First, CommPartners argues that it has so few contacts with the District of Columbia that this Court lacks personal jurisdiction. Def.'s Memor. 13-17 Second, CommPartners argues for dismissal because this Court does not have proper venue. *Id*. at 17-20 Third, CommPartners argues that, even if venue is proper in the District of Columbia, the Court should transfer this case to the District of Nevada for CommPartners' convenience. *Id*. at 12 Finally, CommPartners argues that, if this Court denies the jurisdiction, venue, and transfer motions, this Court should stay the proceedings because the FCC has primary jurisdiction. *Id*. at 7-13.

All of CommPartners' motions should be denied. First, this Court has general personal jurisdiction pursuant to D.C. Code § 13-334(a). CommPartners avails itself of the privileges of conducting business in the District of Columbia. CommPartners holds a certificate of authority to do business in the District of Columbia as a foreign corporation. CommPartners also is certified by the District of Columbia Public Service Commission to provide telecommunications local exchange service as a Competitive Local Exchange Service Provider ("CLEC")   In addition, CommPartners has made other purposeful efforts to advance its business in the District of Columbia. These substantial, purposeful connections eviscerate any notion that requiring CommPartners to defend a lawsuit here is unfair or unexpected.

Second, CommPartners "resides" in the District of Columbia under 28 U.S.C. § 1391(c). Accordingly, venue is proper under 28 U.S.C. § 1391(b), the statute governing venue in a federal question case.

Third, because venue *is* proper in the District of Columbia, the 28 U.S.C. § 1406(a) transfer provision is inapplicable. Further, the factors bearing on whether to order a transfer *when* venue *is* appropriate demonstrate that CommPartners fails to justify transfer pursuant to 28 U.S.C. § 1404(a).

Finally, staying proceedings and referring this case to the FCC is inappropriate. The FCC provides sufficient guidance on whether terminating exchange access charges apply under current law to the service CommPartners agrees it receives from PAETEC. Declar. Clark ¶13 Accordingly, the decision this Court is called upon to make at bar is within its "conventional expertise". Furthermore, the FCC's record of inordinate delay, especially in cases referred to it

2

under primary jurisdiction, compels rejection of the primary jurisdiction doctrine in the instant case.

## FACTUAL BACKGROUND

### The Complaint and Service of Process

On March 4, 2008, PAETEC filed its Complaint alleging that CommPartners refuses to pay exchange access charges under PAETEC's tariffs for using PAETEC's local network facilities to complete, or "terminate", long distance calls to PAETEC's customers located throughout the United States. . Compl. ¶1

On March 11, 2008, PAETEC served the Complaint on CommPartners' "registered agent" for service of process in the District of Columbia located at 1725 I Street, N.W., Suite 300. That premises is the "registered office" maintained by CommPartners as required by the District of Columbia Business Corporation Act, D.C. Code § 29-101.106.

### CommPartners' Motion

On May 2, 2008, CommPartners filed its Motion seeking dismissal, transfer, or stay. CommPartners contends that this Court lacks personal jurisdiction and that venue is improper in the District of Columbia under 28 U.S.C. § 1391(b). If the Court determines that dismissal is not appropriate on either of those grounds, CommPartners moves this Court to transfer the case to the District of Nevada pursuant to 28 U.S.C. § 1406(a) or § 1404(a). Def.'s Mot. If this Court finds personal jurisdiction and proper venue and denies transfer to Nevada, CommPartners moves to stay the proceedings because the FCC has primary jurisdiction.

**Plaintiff PAETEC**

PAETEC is a Delaware corporation authorized to do business in the District of Columbia pursuant to its Business Corporation Act, D.C. Code § 29-101.99. PAETEC has also been certified as a competitive local exchange carrier ("CLEC") by the District of Columbia Public Service Commission.

When another telecommunications company's customer makes a long distance call to a PAETEC customer, that other telecommunications company connects with PAETEC's local exchange network facilities to complete, or "terminate", the call to PAETEC's customer. This service, terminating exchange access service, is billed to CommPartners at rates in PAETEC's FCC and state tariffs.

**Defendant CommPartners**

CommPartners is a limited liability corporation organized under the laws of Nevada and is authorized to do business in the District of Columbia pursuant to its Business Corporation Act, D.C. Code § 29-101.99 and has also been certified as a competitive local exchange carrier ("CLEC") by the District of Columbia Public Service Commission. 2005 WL 2454117 (D.C.P.S.C.). CommPartners states on its website that it offers its services in the 202 area code. www.compartnersconnect.com/carrier_services/faq?

CommPartners operates its network on a "nationwide" basis and "provides voice and other value-added services in 49 states and the *District of Columbia*." (emphasis added) (www.commpartnersconnect.com) CommPartners is certified as a CLEC in 49 states and the District of Columbia. *Id.* CommPartners uses the terminating access services of PAETEC and

4

other local exchange carriers to terminate long distance calls in the District of Columbia and elsewhere in the United States. Declar. Clark ¶13

**The Nature of the Telephone Calls at Issue**

Voice telephone calls are transported over networks using either traditional technology known as TDM protocol or a newer technology known as VoIP.

Whether and when a call utilizes TDM or VoIP is transparent to the parties on the call. Different segments of the same call may involve TDM or VoIP. For example, calls from CommPartners' customers may originate and remain in the VoIP format until CommPartners converts the format to TDM before hand off to PAETEC. Other calls from CommPartners' customers may originate in TDM format, be converted to VoIP somewhere in the middle of the transmission, and converted back to TDM for hand off to PAETEC. All of the calls involved in this lawsuit are already in the TDM format when CommPartners hands them off to PAETEC for termination. Utilizing a self help remedy, CommPartners has refused to pay PAETEC for using PAETEC's terminating exchange access service.

CommPartners characterizes the voice calls at issue as "VoIP originating" calls. Def.'s Brief 7. CommPartners asserts that the FCC has not yet determined that VoIP originating calls are subject to terminating access charges and, accordingly, this Court should refer the issue to the FCC on the ground of primary jurisdiction. *Id.*

PAETEC maintains that the FCC *has provided sufficient guidance* on the issue. The FCC's guidance and other practical and equitable factors discussed below, render the issue one that Court is well-equipped to address. Accordingly, the doctrine of primary jurisdiction is not applicable to the instant case.

**ARGUMENT**

**I.    COMMPARTNERS PURPOSEFULLY AVAILS ITSELF OF THE PRIVILEGE OF CONDUCTING BUSINESS IN THE DISTRICT OF COLUMBIA. ACCORDINGLY, IT IS SUBJECT TO GENERAL PERSONAL JURISDICTION UNDER D.C. CODE § 13-334(a).**

**A.    Standard of Review for the Motion to Dismiss**

Under Fed.R.Civ.P.12(b)(2), a plaintiff bears the burden of establishing a factual basis for personal jurisdiction over the defendant. *See Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C.Cir.1990). As such, the plaintiff must allege specific acts connecting the defendant with the forum. *See Second Amendment Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C.Cir. 2001).

The Court "may receive and weigh affidavits and any other relevant matter to assist it in determining the jurisdictional facts." *United States v. Philip Morris, Inc.,* 116 F.Supp.2d 116, 120 n. 4 (D.D.C. 2000) (citation omitted). However, the Court should resolve any factual discrepancies with regard to the existence of personal jurisdiction in favor of the plaintiff. *See Crane,* 894 F.2d at 456; *Roz Trading Ltd. v. Zeromax Group, Inc., 517* F.Supp *2d 377, 381-2* (D.D.C.2007). *Wickers Sportswear, Inc. Gentry Mills, Inc.,* 411 F.Supp.2d 202, 205-206 (E.D.N.Y.2006)("Where the jurisdictional issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor.")

**B.    By Holding a Certificate of Authority to Do Business Under the Business Corporation Act of the District of Columbia, CommPartners Is Subject to Personal General Jurisdiction In the District of Columbia.**

It is well settled that a court has personal jurisdiction over corporate defendants who purposefully avail themselves of the privileges of doing business in the forum state. *Liban v.*

*Churchey*, 305 F.Supp. 136, 141 (D.D.C. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 475, 105 S.Ct. 2174 (1985). The District of Columbia courts define doing business in

the forum state "as any continuing corporate presence in the forum state directed at advancing

the corporations objectives." A*maf International Corporation v. Ralston Purina Company,* 428

A.2d 849, 851 (D.C.1981); *Gonzales v. Internacional de Elevadores, S.A.,* 891 A.2d 227, 233

(D.C. 2006); *Price v. Griffin*, D.C.App., 359 A.2d 582, 586 (1976); *Ramamurti v. Rolls-Royce

Ltd.*, 454 F.Supp. 407, 409 n.2 (D.D.C. 1978), aff'd, 198 U.S.App.D.C. 92,  612 F.2d 587 (1980).

Under D.C Code § 13-334(a) This Court may exercise *general* personal jurisdiction over

CommPartners for PAETEC's claims arising from CommPartners' conduct anywhere outside of

the District. *Roz Trading Ltd. v. Zeromax Group, Inc., 517* F.Supp *2d* at 382; *Gorman v.

Ameritrade Holding Corp.*, 293 F.3d 506, 509 (D.C.C.2002).

   More specifically, CommPartners is a foreign corporation. Section 29-301.64 (a) of the

Business  Corporation  Act  of  the  District  of  Columbia  provides  that  "A  foreign

corporation…*shall* procure a certificate of authority from the Mayor before it conducts affairs in

the District…" (emphasis added)  Section 29-101.99(a) also provides that "A foreign corporation

*shall*  procure  a  certificate  of  authority  from  the  Mayor  before  it  transacts  business  in  the

District." (emphasis added)

   On June 15, 2004, after making application and paying the filing fee to the District,

CommPartners was granted a certificate of authority. In response to question 8 on its Application

For Certificate of Registration For A Foreign Limited Liability Company, CommPartners states

its business in the District of Columbia is "telecommunications services."  CommPartners filed

its latest annual report in 2007 as required under the Business Corporation Act.  CommPartners

has neither withdrawn its certificate of authority pursuant to Section 29-101.113, nor has its certificate been revoked by the District of Columbia pursuant to Section 29-101.115.

With its certificate of authorization to do business, CommPartners is in the same position regarding general personal jurisdiction as a domestic District of Columbia corporation. Section 29-101.100 provides that "A foreign corporation which shall have received a certificate of authority under this chapter shall, until a certificate of revocation or of withdrawal shall have been issued as provided in this chapter, *enjoy the same rights and privileges as*, but no greater rights and privileges than, *a domestic corporation* organized for the purposes set forth in the application pursuant to which such certificate of authority is issued; *and… shall be subject to the same duties, restrictions, penalties, and liabilities now or hereafter imposed upon a domestic corporation* of like character." (emphasis added) Among the penalties, for example, Section 29-101.129 provides in pertinent part that "*Any corporation* …or *any foreign corporation* which has been *issued a certificate of authority* under this chapter, which *fails…to maintain a registered office or a registered agent in the District of Columbia*…shall be deemed  of a *misdemeanor* and upon conviction thereof…*shall be fined* in an amount not exceeding $500."  Accordingly, as a foreign corporation holding a certificate of authority to do business in the District of Columbia, CommPartners consents to the personal general jurisdiction of its courts.

Among its legally required duties and obligations as a certificated business in the District of Columbia, Section 29-101.106 of the Business Corporation Act provides that a foreign corporation holding a certificate of authority "…*shall have and continuously maintain in the District…a registered office…*" and a "*…registered agent*" who has a business office identical with the registered office." (emphasis added)  Section  29-101.108(a) provides that "The registered agent…appointed by a foreign corporation…shall be an agent of such foreign

corporation upon whom *process* against such corporation may be *served*." (emphasis added)  On March 11, 2008, PAETEC served the Complaint upon CommPartners' "registered agent" at CommPartners' "registered office".  Further, CommPartners concedes the propriety of service of the Complaint.

It is important for satisfying Section 13-334(a) that PAETEC properly served the Complaint. Section 13-334(a) provides in pertinent part "In an action against a foreign corporation doing business in the District, process may be served on the [registered agent] of the corporation… in the District, and *that service is effectual to bring the corporation before the court*." (Emphasis added)  The courts of the District of Columbia hold that,  in addition to relating to service of process, D.C. Code   § 13-334(a) confers general jurisdiction upon the trial courts of the District of Columbia over the foreign corporation. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also Gorman v. Ameritrade Holding Corp.,* 293 F.3d at 509-510 (D.C.Cir. 2002). *Atlantigas Corp. v. Nisource, Inc.,* 290 F.Supp.2d 34, 44 n.12 (D.D.C. 2003). *Ross v. Product Development Corp., 736 F.Supp. 285 (D.D.C1989.)*

The reach of general personal jurisdiction in the District of Columbia is "coextensive with the reach of constitutional due process." *Gorman v. Ameritrade Holding Corp.,* 293 F.3d at 510 (citing *Hughes v. A.H. Robins Co.,* 490 A.2d 1140, 1148 (D.C.1985). Unlike the District's long-arm statute, Section 13-423(a)(1), general personal jurisdiction is not limited to claims arising from the particular transaction of business which forms the basis of jurisdiction. *AMAF International Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C.1981). Accordingly, CommPartners' argument about where the claims arose at bar is irrelevant to the jurisdictional issue.

By obtaining the privileges and incurring the duties of a foreign corporation certificated to do business in the District of Columbia, CommPartners' consents to the jurisdiction of this Court. Accordingly, its motion to dismiss for lack of personal jurisdiction is groundless and must be denied.

### C.    CommPartners' Activities, Purposefully Directed at Providing Its Telecommunications Services in the District of Columbia, Demonstrate That It Must Expect Being Subject to Suit Here.

CommPartners' contacts with the District of Columbia are not "random", "fortuitous" or "attenuated". *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, (1984); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, (1985). CommPartners' contacts have been and are deliberate and for the purpose of providing telecommunications services in the District of Columbia. *See e.g. Gonzales v. Internacional De Elvadores,* 891 A.2d at 233. CommPartners' contention that it is did not expect or is otherwise surprised to be sued here is hollow. *Mouzavires v. Baxter*, 434 A.2d 988, 995-996 (D.C.1981).

In addition to holding a certificate of authorization under the Business Corporation Act, CommPartners in 2005 applied for and was granted a certificate to provide local exchange telecommunications service by the District of Columbia Public Service Commission. *In re CommPartners,* 2005 WL 2454117. CommPartners appeared before the Public Service Commission and made an extensive showing relating to its financial, technical, operational, and managerial abilities to provide telecommunications services in the District of Columbia. *Id.*

As detailed below, CommPartners' further demonstrates on its website its purposeful presence in the District of Columbia to provide telecommunications services. (www.compartnersconnect.com.) Additionally, CommPartners admits that among its services available to its customers on a "nationwide" basis is the ability to call parties in the District of

10

Columbia. Declar. Clark ¶13-15 Taken together, all of CommPartners' substantial, purposeful contacts with the District of Columbia eviscerate any notion that requiring CommPartners to defend a lawsuit here is unexpected or unfair.

CommPartners states in an April 14, 2008 press release that CommPartners provides telecommunications services in the District of Columbia. "CommPartners Connect's CLEC network provides business-grade, IP-based voice and other value-added services in 49 states and the District of Columbia." (underlining added) (www.commpartnersconnect.com/news/04-16-2008/) CommPartners coincidentally bylined the location of its April 14, 2008 press release as in Washington, D.C. *Id.*

In its "About CommPartners Connect" tag line to its press releases throughout its website, CommPartners says that it "…has obtained Competitive Local Exchange Carrier (CLEC) certifications in 49 states and the District of Columbia." www.compartnersconnect.com.

CommPartners provides on its website an interactive "Coverage Availability Tool" which invites inquirers to input their 10 digit telephone number to confirm that CommPartners will provide service to that telephone number. www.compartnersconnect.com/carrier_services/faq? "Enter your area code and phone number to check coverage in your area." *Id*. When an inquirer inputs a "202" area code telephone number, the website states "Congratulations! Service is available" in the "202" area code. Further, the website informs the inquirer that the rates to be charged are governed by a rate center entitled "WSHGTNZN1". *Id*.

LATA's divide the United States into telecommunications service areas on a geographical basis. Also on its website, CommPartners shows a chart listing its "WHOLESALE FOOTPRINT LATA COVERAGE". www.compartnersconnect.com/carrier_services (on bottom

of page, under coverage maps, hit link to Commpartnersconnect Wholesale LATA Map (pdf.)) The chart lists the LATAs in which CommPartners states it provides its wholesale services to its customers. Included on the chart indicating geographical areas in which service is available is LATA 236, the LATA for Washington D.C. *Id.*

Finally, CommPartners admits that it sells the service to its customers that enables them to call parties in the District of Columbia who are customers of other companies. Declar. Clark ¶13-15 CommPartners sells as part of its services the ability to terminate calls into the District of Columbia. CommPartners admits that it uses the networks of other telephone companies, including PAETEC, to provide this service. *Id.*

CommPartners' assertion that its contacts with the District of Columbia are so inconsequential that it is unexpected and unfair to require CommPartners to defend lawsuits here is plainly wrong.

## II.    VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1391(b)(1).

At bar, jurisdiction is premised on both federal question and diversity. Compl. ¶4 Accordingly, 28 U.S.C. § 1391(b)(1) governs venue. That statute provides in pertinent part that "A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where [the] defendant *resides.*" Section 1391(c) provides that for "purposes of venue under this chapter, a defendant that is a corporation shall *be deemed to reside in any judicial district* in which it is subject to personal jurisdiction at the time the action is commenced." (emphasis added)

As discussed in Section I. above, CommPartners is subject to personal jurisdiction in

District of Columbia. Accordingly, venue is lies in this Court as a matter of law. *Barham v. UBS Financial Services*, 496 F.Supp 174, 176-178 (D.D.C.2007). CommPartners motion to dismiss this case pursuant to Fed.R.Civ.12(b)(3) on the ground of lack of venue is meritless.

## III.    THE CASE SHOULD NOT BE TRANSFERRED TO THE DISTRICT OF NEVADA UNDER EITHER 28 U.S.C. § 1406(a) OR 28 U.S.C. § 1404(a).

### A. Since venue lies in the District of Columbia, 28 U.S.C. § 1406(a) does not apply.

CommPartners contends that the Court should transfer this case to the District of Nevada pursuant to either 28 U.S.C. § 1406(a) or, alternatively, pursuant to 28 U.S.C. § 1404(a).

Section 1406(a) provides that "The district court of a district in which is filed a case laying venue in the *wrong* division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added) Venue is proper in the District of Columbia under 28 U.S.C. § 1391(b). Accordingly, CommPartners' motion to dismiss or transfer pursuant to 28 U.S.C. § 1406(a) must be denied because that statute is, on its face, inapplicable. *Capital Bank Intern. Ltd. v. Citigroup, Inc.*, 276 F.Supp.2d 72, 78 (D.D.C. 2003.)

### B. CommPartners has failed to satisfy its burden as the moving party for transfer under 28 U.S.C. § 1404(a).

#### 1. The Legal Standard for Section 1404(a)

Alternatively, CommPartners moves this Court pursuant to 28 U.S.C. § 1404(a) for a transfer to Nevada despite venue properly lying in the District of Columbia.

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it may have been brought." The Court has "broad discretion" to order transfer under this standard. *Rosales v. United States,* 477 F.Supp.2d 213, 215 (D.D.C.2007) (quoting *In re Scott,* 709 F.2d 717, 720 (D.C.Cir.1983)). "[T]he proper technique to be employed is a factually analytical, case-by-case determination of convenience and fairness." *SEC v. Savoy Indus.,* 587 F.2d 1149, 1154 (D.C.Cir.1978) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). "As a general matter, the burden is on the party seeking transfer to demonstrate that the 'balance of convenience of the parties and witnesses and the interest of justice are in [its] favor.' " *Thayer/Patricof Educ. Funding LLC v. Pryor Res.,* 196 F.Supp.2d 21, 31 (D.D.C.2002) (quoting *Armco Steel Co. v. CSX Corp.,* 790 F.Supp. 311, 323 (D.D.C.1991)). As the Supreme Court has held, unless the balance tips strongly in favor of defendant, plaintiff's choice of forum is to be respected. *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947). *See also Dooley v. United Techs. Corp.,* 786 F. Supp. 65, 82 (D.D.C. 1992) (holding that the court must weigh the convenience of the parties and witnesses and the interest of justice "against the longstanding principle that the plaintiff's choice of forum rarely should be disturbed").

There are several relevant factors to consider in the Section 1404(a) analysis. These include public and private interests. The private interest considerations include: (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses ..., but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. The public interest considerations include: (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Id.*

14

**2. Analysis of the Relevant Private Factors for a Transfer to the District of Nevada shows that the motion to transfer is meritless.**

(1) The *plaintiffs' choice of forum* should not be disturbed because the balance of convenience is not strongly in favor of the defendants. *F.T.C. v. Cephalon, Inc.,* -- F.Supp.2d --, 2008 WL 1867103 (D.D.C.2008.) PAETEC and CommPartners are both residents of the District of Columbia under the venue statute. The District of Columbia poses no more or less of a convenience to PAETEC and CommPartners. Both parties are doing business. To the extent any travelling might be involved, Las Vegas is not much more inconvenient than Rochester, New York where PAETEC is headquartered.

(2) The *defendants' choice of forum* merely substitutes any inconvenience for CommPartners in the District of Columbia for inconvenience to PAETEC. This case will not involve many, if any, material witnesses. There are no significant facts in dispute. To the extent there may be, the evidence will be contained in electronic records easily transportable by telecommunications. The paramount issue in the case, the applicability of terminating exchange access charges, is one of law to be applied to undisputed facts.

*(3) Whether the claim arose elsewhere* is an immaterial consideration at bar. The claim concerns interstate telecommunications occurring throughout the nation. Some of the calls were terminated in the District of Columbia. Most of the calls were terminated in a multitude of different states. All states have an interest in the outcome of this case. However, it is the identical interest for all states.

(4) As demonstrated throughout this private interests analysis, the convenience of the parties is a neutral factor lifting no weight from CommPartners' burden under the transfer statute.

(5) The *convenience of the witnesses* ..., but only to the extent that the witnesses may

*actually be unavailable* for trial in one of the fora. To the extent witnesses will be necessary, there is no reason to believe any will be unavailable for trial in the District of Columbia. There is no contention that any of the witnesses are *not employees* of the parties and, accordingly, under their control with respect to being a witness in the District of Columbia or Nevada. Defendant has not even proffered a list of witness and particularized what their testimony will concern.

(6)  The sources of proof at bar are easily accessible in the District of Columbia. As mentioned above, at most the only proof should involve electronic records that can be sent over telecommunications facilities.

### 3. Analysis of the Relevant Public Interest Factors for a Transfer to the District of Nevada Shows That the Motion to Transfer is Meritless.

Regarding the public interests, (1) the transferee's familiarity with the governing laws is at best a neutral factor. This case involves only federal law.

(2) The defendant CommPartners has provided no information concerning the relative congestion of the calendars of the District of Nevada and the District of Columbia. The relative congestion factor adds nothing to the transfer request.

(3) The local interest in deciding local controversies at home adds nothing to support the transfer request. The issue in this case concerns a nationwide federal question.

Based on analysis of the material factors, defendant has clearly not met its burden to justify a transfer to the District of Columbia pursuant to section 1404(a) and its motion should be denied.

## IV.    THE DOCTRINE OF PRIMARY JURISDICTION IS INAPPLICABLE.

### A. The Primary Jurisdiction Doctrine

CommPartners argues that this Court should decline to hear the plaintiff's case under the doctrine of primary jurisdiction. Def.'s Brief at 7 Primary jurisdiction allows a district court to refer a matter to an administrative agency on the ground that the agency is "best suited to make the initial decision on the issues in dispute, even though the district court has subject-matter jurisdiction. *Lipton v. MCI WorldCom, Inc., 135* F.Supp.2d 182 (D.D.C.); *American Ass'n of Cruise Passengers v. Cunard Line, Ltd.,* 31 F.3d 1184, 1186 (D.C.Cir.1994) (citing *Allnet Communication Serv., Inc. v. Nat'l Exchange Carrier Ass'n, Inc.,* 965 F.2d 1118, 1120 (D.C.Cir.1992)).

"Primary jurisdiction is invoked in situations where the courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Total Telecomm. Serv., Inc. v. AT & T,* 919 F.Supp. 472, 478 (D.D.C. 1996), *aff'd,* 99 F.3d 448, 1996 WL 590872 (D.C.Cir.1996) (quoting *Marshall v. El Paso Natural Gas Co.,* 874 F.2d 1373, 1376 (10th Cir.1989). Primary jurisdiction does not require the court to dismiss the case, but merely to suspend the matter pending agency resolution. *See Marshall,* 874 F.2d at 1376-77 (citing *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

Although there is no fixed formula for determining whether to apply the doctrine of primary jurisdiction, *see United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), courts have traditionally considered four factors: (1) whether the question at issue is within the conventional expertise of judges; (2) whether the question at issue lies particularly within the agency's discretion or requires the exercise of agency expertise; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made. *See Total Telecomm.,* 919 F.Supp. at 478.

Application of the legal standard for primary jurisdiction to the instant case demonstrates that the doctrine is inapplicable.

### B.  The FCC Holds That The proper Forum for Recovery of Unpaid Access Charges is the Federal District Court.

The FCC has held that the proper forum for "an action for recovery of unpaid access charges that are allegedly due under the terms of a federal tariff," is the federal district court. *U.S. Telepacific Corp., d/b/a Telepacific Communications, v. Tel-America of Salt Lake City, Inc.,* 19 FCC Rcd 24552 (2004), at ¶ 8.  Citing *MCI Telecommunications Corp. v. FCC*, 59 F.3d 1407 (D.C. Cir. 1995), *cert. denied*, 517 U.S. 1129 (1996), the FCC noted that under long-standing precedent "the Commission does not act as a collection agent for carriers with respect to unpaid tariffed charges, and that such claims should be filed in the appropriate state or federal courts." *Id.* at ¶ 8 and n. 27.  This is particularly true where, as here, the charges sought to be collected include intrastate charges over which the FCC has no jurisdiction.  *Id.* at n. 25.  To the extent that adjudication of the claims requires interpretation of the carrier's federal tariffs, the FCC noted that "such issues of tariff interpretation are well within the expertise of the District Court."  *Id.* at n. 31, citing *Advamtel, LLC v. AT & T Corp.*, 105 F.Supp.2d 507 (E.D. Va. 2000).

As PAETEC will be prepared to show on summary judgment before this court, its tariff language unambiguously supports its collection claims.  PAETEC's relevant federal and state access tariffs define "access service" to include

> all services and facilities provided by the Company for the origination or termination of any interstate or foreign telecommunications using the Company network or origination or termination of other services utilizing the same Company network services or functionality regardless of the technology used in transmission. This includes, but is not limited to, Internet Protocol or similar services.

PAETEC's interstate access tariff is "deemed lawful" because it was filed with the FCC pursuant to 47 U.S.C. § 204(a)(3).  As a result, to the extent that CommPartners claims that PAETEC's tariff language or rates are invalid because they are "unjust and unreasonable" under the Communications Act, only prospective relief would be available.  *ACS of Anchorage, Inc., v. FCC*, 290 F. 3d 403 (D.C. Cir. 2002).  Under similar circumstances, the court in *PAETEC Communications, Inc., v. Core Comm-ATX, Inc.,* 2002 WL 31240176 (E.D. Pa. 2002), properly denied the defendant's request for primary jurisdiction referral of PAETEC's tariff-based claims.

**C.  FCC Precedent Makes Clear That the Issue To Be Addressed Is Within This Court's Conventional Expertise and Does Not Require Further Exercise of the FCC's Expertise.**

The issue before this Court is within the conventional expertise of judges and does not require further exercise of the FCC's expertise. As discussed below, the FCC has provided sufficient guidance in rulings concerning "interconnected VoIP service" providers' financial and operational obligations, including with respect to payment of exchange access charges, to enable this Court to make a decision without a prior referral to the FCC.

The FCC defines an interconnected VoIP service provider in 47 CFR § 9.3. That rule states in pertinent part that a telecommunications company is an interconnected VoIP telecommunications provider if it offers VoIP service that "(4) Permits users generally to receive calls that originate on the public switched telephone network and to terminate calls to the public switched telephone network." CommPartners agrees that it *is* an interconnected VoIP telecommunications service provider. Decl.Clark ¶7

CommPartners' network connects public and private VoIP networks with the Public Switched Telephone Network (PSTN). The PSTN utilizes the traditional TDM format for terminating long distance calls. CommPartners provides a network enabling VoIP providers to

19

originate and terminate end to end VoIP communications, as well as allowing VoIP providers to terminate VoIP calls to called parties who use the TDM format on the PSTN. TDM format calls are also known as circuit-switched telephone calls. Decl.Clark ¶7.  CommPartners agrees the terminating access service PAETEC provided CommPartners in the instant case utilized PAETEC's PSTN facilities in the TDM format.

The issue before this Court is whether CommPartners, who originates long distance calls that, for some or all of their segments *prior to being handed off* by CommPartners in TDM format to PAETEC have been in the VoIP format, must pay terminating exchange access services to PAETEC. CommPartners agrees that, whether the calls were carried by CommPartners completely or partially in VoIP format, these calls are in the TDM format when handed over to PAETEC. CommPartners further agrees that PAETEC provides CommPartners terminating exchange access service after the call is handed off

Although never expressly addressing the issue at bar, the guidance from the FCC's decisions shows that the answer should be "yes". Those decisions make the chances of a "no" answer remote. Accordingly, there is enough certainty what the current law is to render the primary jurisdiction doctrine inapplicable.

The first FCC order directly addressed the application of access charges. *In the Matter of AT & T's Phone-to-Phone IP Telephony Services,* 2004 WL 856557, 19 F.C.C.R. 7457 (2004) ("*IP-in-the-Middle Order*").  In its *IP-in-the-Middle Order,* the FCC held that access charges applied to *certain* long distance calls that utilized VoIP. In particular, the FCC addressed calls originating in TDM format and converting to VoIP in the middle, before being handed off, again in the TDM format, to terminating exchange carriers. Although expressly limiting its decision to

the case before it, the FCC issued guidance on the principles driving the decision reached in that case.

The paramount principle established by the FCC in its *IP-in-the-Middle Order* is that when VoIP carriers use the local TDM networks of other exchange carriers in the traditional manner, VoIP carriers must pay for that use, or otherwise be treated like, conventional TDM carriers. This common and consistent thread runs through the consistently reasoned orders that the FCC has issued since its IP-*in-the-Middle Order.*

The FCC has ordered interconnected VoIP providers to make contributions to the federal Universal Service Fund. *In the Matter of Universal Service Contribution Methodology*, 2006 WL 1765838 (F.C.C.) ¶15, 21 FCC Rcd. 7518 ("*Universal Service Order*") The Universal Service Fund provides subsidies to local exchange carriers in high cost areas. The Commission was consistent with its principle of treating "apples like apples".    The FCC reasoned that Universal Service Fund contributions were fair because much of the appeal of VoIP service to consumers derives from the ability to place calls to and receive calls from the public switched telephone network, which is supported by universal service mechanisms. The FCC also applied a competitive neutrality principle, finding that VoIP providers should contribute because they increasingly compete with TDM voice service providers who also contribute to the Universal Service Fund. *Id.* at 7540-1. The FCC requires interconnected VoIP carriers to pay regulatory fees on the same basis as traditional long distance carriers. *In the Matter of Assessment and Collection of Regulatory Fees for Fiscal Year*, 2007 WL 2241209 at ¶4, 22 FCC Rcd 15712 , 22 F.C.C.R. 15712.

In addition to financial issues, the FCC has issued numerous orders applying the treating "apples like apples" principle to a host of operational requirements aimed at carrier obligations to consumers and the general public.  For instance, the FCC has ordered all interconnected VoIP providers to ensure that their users are able to reach local emergency centers when making E911 calls. *In the Matters of IP-Enabled Services E911 Requirements for IP-Enabled Service Providers,* 2005 WL 1323217, 20 F.C.C.R. 10245 (2005). Interconnected VoIP carriers must also provide assistance to law enforcement authorities similarly to traditional carriers, *In the Matter of Communications Assistance for Law Enforcement Act and Broadband Access Services,* 2005 WL 2347765, 20 FCC Rcd. 14989 (2005), and comply with disability access requirements, *In the Matters of IP-Enabled Services Access to Telecommunications Service, Telecommunications Equipment and Customer Premises Equipment by Persons with Disabilities,* 2007 WL 1744291, 22 F.C.C.R. 11275 (2007).

With respect to consumers of interconnected VoIP carriers' services, in 2007 the Commission extended Title II customer proprietary network information obligations to interconnected VoIP providers. *Implementation of the telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information IP-Enabled Services,* 22 FCC Rcd 6227 (2007) ("CPNI Order") Again, the Commission found that interconnected voice service increasingly is a replacement for TDM format voice service: "It therefore seems reasonable for American consumers to expect that their telephone calls are private, irrespective of whether the call is made using the services of a wireline carrier, a wireless carrier, or an *interconnected VoIP provider, given that these services, from the perspective of a customer making an ordinary telephone call, are virtually indistinguishable. Id.*at ¶ 56. Most recently, the Commission extended local number portability

obligations to interconnected VoIP providers to ensure that their customers may transfer their telephone numbers when changing telephone providers. *In the Matter of Telephone Number Requirements for IP-Enabled Services Providers,* 2007 WL 3306343, 22 FCC Rcd 19531 (2007).

CommPartners suggests that federal courts lack sufficient expertise in determining CommPartners' role/method in transmitting calls and technical aspects of call routing. (Although CommPartners provides no details with respect to technical issues that must be decided by this Court. The argument is meritless. To the extent at all necessary, discovery will show uncontroversial technical of call routing relevant to this case, if any.

CommPartners purportedly relies on pending FCC rulemaking proceedings in claiming a stay should be But this case seeks to apply *existing* law to CommPartners' failure to pay access charges. The rulemaking proceedings on involve proposed changes to existing rules *that will operate only prospectively.*

Applying the guidance of the above discussed FCC's orders to decide what is the current law is within the conventional expertise of this Court. The third primary-jurisdiction factor instructs the court to consider whether there exists a substantial danger of inconsistent rulings. The FCC's guidance makes the chance of inconsistent rulings unlikely. There are no factual inquiries requiring the particular expertise of the administrative agency and, therefore, no substantial danger of inconsistent rulings.

Finally, the court must consider whether a prior application has been made to the particular agency. CommPartners states it has not made a prior application to the FCC.

### D. The FCC's Record of Unreasonable Delays in Responding to Primary Jurisdiction Referrals, Especially in the VoIP area, Weighs Heavily Against Referral In the Instant case.

The primary jurisdiction doctrine serves to give parties a "reasonable opportunity to seek an administrative ruling" and thus to permit the court to obtain the benefit of agency guidance, *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). It is not intended to frustrate plaintiffs from obtaining their day in court. Indeed, in light of the "undue delay" that might result from referral, courts are "reluctant…to invoke the doctrine" in the first instance. *Access Telecomms. v. Southwestern Bell Tel. Co.,* 137 F.3d 605, 608 (6th Cir.1998).

As discussed above, this Court has available agency guidance and precedent to make it amply suited to decide the issue in this case. This absence of any need for further agency guidance and the FCC's record of inordinate delay in referrals concerning similar applicability of access charges to VoIP associated service argue persuasively for denial of a referral to the FCC in the instant case. Further, there is ample precedent by courts reflecting this principle in the area of vacating granted referral orders and proceeding to decide the matter itself. *American Auto Mfrs. Ass'n v. Massachusetts Dept. of Env'l Prot'n,* 163 F.3d 74, 82 (1st Cir. 1998). At bar these principles compel denial of CommPartners' motion for referral.

At the outset, PAETEC duly notes that courts have often referred cases involving similar questions relating to VoIP service to the FCC. *See, e.g., Frontier Tel. of Rochester, Inc. v. USA Datanet Corp.,* 386 F. Supp. 2d 144, 149 (W.D.N.Y. 2005) (holding that determination of whether access charges are applicable to VoIP providers was within FCC's primary jurisdiction); *Southwestern Bell Tel., L.P. v. Global Crossing Ltd.,* No. 4:04-CV-1573 (CEJ) (E.D. Mo. Feb. 7, 2006) (unpublished decision) (holding that a primary jurisdiction stay was appropriate for the "pending determination by the FCC of the obligations of the participants in the transmission of long distance telephone calls using IP format"); *Southwestern Bell Tel., L.P. v. VarTec Telecom,*

*Inc.,* No. 4:04 CV 1303 (CEJ), 2005 WL 2033416, at *4 (E.D. Mo. Aug. 23, 2005) (holding that a LEC's claims for access charges against VoIP providers presented "a technical determination far beyond the Court's expertise" and required a "policy determination currently under review by the FCC"); *Southern New England Tel. Co. v. Global Naps, Inc.,* No. Civ. A. 304CV2075JCH, 2005 WL 2789323, at *6 (D. Conn. Oct. 26, 2005) ("*SNET*") (determination of whether "IP-related services are enhanced," *i.e.,* "information service" rather than "telecommunications service," requires a primary jurisdiction referral, because that issue is "very much in flux and currently being considered by the FCC"). However, as discussed below, the futility of such referrals and the evolution of significant FCC guidance over recent years have called that route in to serious question and is being revisited.

For instance in *Southwestern Bell Telephone, L.P. v. Global Crossing Limited,* No. 4:04-CV-1573CEJ (E.D. Mo. Filed April 15, 2008) ("*Global Crossing Telecomm., Inc. v. Southwestern Bell Telephone Co.")* (Plaintiffs' Motion to Vacate Stay), the plaintiff filed a motion to vacate a stay granted by the court more than two years ago. There, the FCC just has not acted on the referral nor has it indicated that such a response is imminent.

The plaintiff in *Global Crossing Telecomm., Inc. v. Southwestern Bell Telephone Co.* also notes the development on sufficient guidance to put the issue in that well within the court's regular competence. The same court had previously vacated a similar stay when the FCC's inaction was of a shorter duration than the time at issue in current motion case. *See Global Crossing Telecomms., Inc. v. Southwestern Bell Telephone Co., L.P.,* No. 4:04-CV-00319-ERW (E.D. Mo. Filed March 17, 2004) ("*Global Crossing v. SWBT*"). Approximately 18 months after entering the stay and referring the matter to the FCC, the court lifted the stay to proceed with the case. *See* Courtroom Minute Sheet, *Global Crossing v. SWBT* (Jan.6, 2006) [#35] stay.

The long delay in awaiting FCC action directly "on all fours" with issue at bar, combined with the lack of any indication by the agency as to when it will rule further, warrants denial of CommPartners' motion to stay at this time. As the Eighth Circuit has explained, courts should be "reluctant" to invoke the doctrine in the first place "because added expense and delay may result." *Access Telecomms v. Southwestern Bell tel. Co.,* 137 F.3d 605, 608 (8th Cir. 1998). Where, as with the FCC's record, the agency fails to respond to straightforward primary jurisdiction referrals *for years*, it is appropriate to deny a stay and proceed with this case.

Nor may CommPartners claim that PAETEC should have originally filed this suit at the FCC instead of federal court. As the FCC made clear in the *IP-in-the-Middle Order*, the FCC does not "act as a collection agent for carriers with respect to unpaid tariffed charges." *IP-in-the-Middle Order* ¶ 23 n.93

Finally were the FCC some point to issue an inconsistent order, then the Court could incorporate the FCC's ruling. Indeed, the primary risk here is not inconsistent rulings, but no rulings at all. At this stage the FCC's record of delay counsels action by this Court, not the sanctioning of further delay.

## CONCLUSION

For the reasons set forth above, CommPartners' motions to dismiss, to transfer, and to stay this case.

Respectfully submitted,

**/s/ Jeffrey J. Binder**
Jeffrey J. Binder, Esq.
D.C. Bar #475821
The Watergate
2510 Virginia Avenue, N.W.
Washington, D.C. 20037
Telephone: (202) 965-0199

E-mail:     j.j.binder@verizon.net

ATTORNEY FOR PLAINTIFF PAETEC

DATED: June 30, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

PAETEC COMMUNICATIONS, INC.          )

                Plaintiff,          )

                                )

          v.          )    C.A. No. 1:08 - cv – 00397 (JR)

                                )

COMMPARTNERS, LLC          )

              Defendant.          )

_____ )

**PROPOSED ORDER**

IT IS HEREBY ORDERED THAT

the  Defendant CommPartners Motion to Dismiss is denied.

                    SO ORDERED, this___ day of ___, 2008

                    _____

                    The Honorable James Robertson